[Cite as *State v. Smith*, 2013-Ohio-3789.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO. 1-13-09

      v.

BRIAN K. SMITH, JR.,             O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2012 0283

**Judgment Affirmed**

Date of Decision: September 3, 2013

APPEARANCES:

    *Michael J. Short* **for Appellant**

    *Terri L. Kohlrieser* **for Appellee**

Case No. 1-13-09

**SHAW, J.**

{¶1} Defendant-appellant Brian K. Smith, Jr., ("Smith") appeals the February 14, 2013, judgment of the Allen County Common Pleas Court sentencing Smith to an aggregate prison term of fifteen years upon Smith's convictions for two counts of Felonious Assault in violation of R.C. 2903.11(A)(1), both felonies of the second degree, one count of Aggravated Robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree, and two counts of Kidnapping in violation of R.C. 2905.01(A)(3), both felonies of the first degree.[1]

{¶2} The facts relevant to this appeal are as follows. On March 8, 2012, Linsey Knoch ("Knoch") and Christopher Miller ("Miller") were visiting with Knoch's good friend Candace Williams ("Williams") at Williams's residence.[2] At the time, Williams was pregnant with Smith's child. While Knoch and Miller were at Williams's residence, Smith came over. Later, when Williams was already upstairs asleep, Knoch and Smith got into an argument as Knoch called Smith a "dead beat father." Eventually, as the argument continued, Smith became upset and hit Knoch in the head, knocking her to the floor.

---

[1] Smith pled guilty to the charges against him.
[2] As there was no trial in this case, there is not a single narrative of facts. Therefore, these facts have been compiled from the Indictment, the Police Reports, the Pre-Sentencing Investigation, the Bill of Particulars, the hearing on the Motion to Suppress Evidence, and the Sentencing Hearing.

{¶3} In an effort to prevent Smith from further assaulting Knoch, Miller attempted to put Smith in a headlock. Smith broke out of the headlock and was infuriated, prompting him to strike Miller numerous times in the head/face area with both his fists. As a result of the strikes, Knoch stated that blood went everywhere. Knoch then attempted to run out the front door, making it as far as the front porch where a neighbor saw her. Smith ran after her and told the neighbor that everything was okay and then Smith dragged Knoch back into the house.

{¶4} Back inside the residence, Smith resumed beating Miller. At some point, Miller fell to the floor and Smith repeatedly kicked Miller in his back and head. Knoch tried to stop Smith from continuing to kick Miller in the head, but Smith head-butted her, knocking her down, causing a large hematoma to develop on her forehead.

{¶5} Smith eventually got a saucepan from the kitchen and repeatedly beat Miller with it, striking Miller with such force that the pan was dented. While Smith beat Miller, Smith yelled at Miller, "If you go down, she gets it," meaning that if Miller passed out, Smith would start to beat Knoch.

{¶6} At one point, Smith told Miller and Knoch that Smith was going to cut them up into little pieces and bury them in the basement. Smith looked through

the kitchen for a knife but did not find one. Smith then grabbed a pizza cutter and slashed at Miller, but the pizza cutter was dull so it did not cut him.

{¶7} After the beatings ceased, Smith forced Miller to wipe his blood off the walls in the living room with a baby wipe, saying to Miller, "Wipe the walls, bitch! I ain't getting caught up from this!" Knoch observed that Miller appeared to barely be conscious, but was complying with the orders that Smith gave him.

{¶8} Eventually, Smith told Miller and Knoch to take their clothes off. Knoch talked Smith out of having to take her clothes off, but Miller disrobed, at which point Smith took Miller's money. Knoch then again tried to escape, but Smith put his hand against the door and would not let her out.

{¶9} Smith next ordered Miller upstairs to take a shower to wash the blood off of him, and Knoch went with him. During that time, Smith came up and down the stairs repeating how he was going to cut them up and bury them in the basement. On one of the times up the stairs, Smith threw a wine bottle at Knoch that hit her in the head with such force that it cut her head deeply, going through to the third layer of skin/tissue causing her to bleed profusely. This injury was approximately three inches long and later required 28 sutures to close.

{¶10} While this was going on, Williams, who had been in her room asleep with her children, managed to call one of her friends and had her friend call the police. The police subsequently arrived to Williams's residence and Smith made

Knoch and Miller leave the bathroom where Miller had been washing the blood off of him. Smith shoved Miller into a closet, and turned off the lights to the house and told Knoch to "shut the kids up."

{¶11} When no one answered the door, police broke the glass to gain entry into the residence. Knoch then dashed down the stairs with blood all over her forehead and told the officers that "he" was still upstairs. Officers searched the residence and located Smith, who was hiding under a mattress. Smith, who also had active warrants out for his arrest, was arrested. As Smith was being taken out of the house, he passed Knoch and said, "You know you had that coming."

{¶12} Knoch and Miller were taken by ambulance to St. Rita's Medical Center in Lima. Miller had to be placed on life support to aid his breathing and he slipped into a coma. He also suffered a broken rib and a laceration in his nostril that required what the doctor referred to as a "complex repair." Miller's airway was stabilized and he regained consciousness later that evening. After a few days in the hospital, he was released. However, due to nerve damage he suffered, he has permanent injuries to his arms with nerve sensitivity and numbness.

{¶13} Knoch's wound on her head had gone down to the last layer of tissue just before the skull. The Physician's Assistant stated that in his 10 years of ER experience less than 5% of these wounds had involved injuries going down that far. Knoch was treated and released the same day.

{¶14} On August 16, 2012, Smith was indicted in a five count indictment by the Allen County Grand Jury. Count 1 charged him with Felonious Assault of Christopher Miller in violation of R.C. 2903.11(A)(1), a felony of the second degree; Count 2 charged him with the felonious assault of Knoch in violation of R.C. 2903.11(A)(1), a felony of the second degree; Count 3 charged him with Aggravated Robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree; Count 4 charged him with Kidnapping of Miller in violation of R.C. 2905.01(A)(3), a felony of the first degree; and Count 5 charged him with Kidnapping of Knoch in violation of R.C. 2905.01(A)(3), a felony of the first degree.

{¶15} On August 27, 2012, Smith filed a motion for bill of particulars. (Doc. 11).

{¶16} On August 31, 2012, Smith filed a motion to suppress, arguing that, *inter alia*, a statement Smith gave March 8, 2012, to Detective Scott Leland should be suppressed. (Doc. 13). On September 27, 2012, a hearing was held on the motion to suppress. On October 9, 2012, the trial court filed a judgment entry denying Smith's motion to suppress the statement he gave to Detective Scott Leland. (Doc. 24).

{¶17} On October 16, 2012, the State filed a bill of particulars. (Doc. 29).

{¶18} On January 7, 2013, a hearing was held wherein Smith agreed to plead guilty to the charges in the indictment. In exchange, the State agreed to stand silent at sentencing, but reserved the right to argue against merger of the offenses. In addition, it was also included in the plea agreement that the court would "sentence [Smith] to no more than what he could get for three F-2s, or 24 years," as Smith had previously been given an offer to plead guilty to three F-2s, but declined that offer.[3] The trial court conducted a Criminal Rule 11 colloquy with Smith at the hearing, and then accepted Smith's guilty plea to the charges.

{¶19} On January 8, 2013, the trial court entered a judgment entry of conviction, stating that Smith had pled guilty to two counts of Felonious Assault in violation of R.C. 2903.11(A)(1), both felonies of the second degree, one count of Aggravated Robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree, and two counts of Kidnapping in violation of R.C. 2905.01(A)(3), both felonies of the first degree. (Doc. 81).

{¶20} On February 14, 2013, a sentencing hearing was held. At the sentencing hearing, Smith's mother gave testimony that Smith had an alcohol problem and that he needed help with that problem. Smith also gave a statement that he had a drug and alcohol problem, and that he was sorry for what he had done to the victims.

---

[3] The plea agreement containing this language was filed January 8, 2013. (Doc. 80).

{**¶21**} Ultimately, Smith was sentenced to 5 years in prison on each of the five counts in the indictment, with Count 1 to run concurrent to Count 4 (the Felonious Assault and Kidnapping of victim Miller), and Count 2 to run concurrent to Count 5 (the Felonious Assault and Kidnapping of victim Knoch). It was further ordered that the prison term for Counts 1 and 4 was to be served consecutive to the prison term imposed for Counts 2 and 5 and that those prison sentences would be served consecutive to the five year prison term for Count 3 (Aggravated Robbery), for an aggregate prison sentence of 15 years. (Doc. 87).

{**¶22**} It is from this judgment that Smith appeals, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED IN FAILING TO MERGE COUNTS FOR THE PURPOSES OF SENTENCING.**

{**¶23**} In his assignment of error, Smith argues that the trial court erred in failing to merge various counts against him for the purposes of sentencing. Specifically, Smith contends that his convictions for Felonious Assault and Kidnapping against each victim were part of the same course of conduct and should merge, and that his conviction for Aggravated Robbery should merge with his Felonious Assault and Kidnapping offenses against Miller.

{**¶24**} Whether offenses are allied offenses of similar import is a question of law that this Court reviews de novo. *State v. Stall,* 3d Dist. No. 3–10–12, 2011–

Ohio–5733, ¶ 15, citing *State v. Brown,* 3d Dist. No. 1–10–31, 2011–Ohio–1461, ¶ 36. Revised Code 2941.25, Ohio's multiple-count statute, states:

**(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

{¶25} In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, the Supreme Court of Ohio modified the analysis for determining whether offenses are allied offenses of similar import under R.C. 2941.25. According to *Johnson*, a court must first determine whether it is possible to commit both offenses with the same conduct. *Id.* at ¶ 48. "If the multiple offenses can be committed with the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008–Ohio–4569, ¶ 50 (Lanzinger, J., dissenting). If it is possible to commit the offenses with the same conduct and the defendant did, in fact, commit the multiple offenses with the same conduct, then the offenses are allied offenses of similar import and will merge. *Id.* at ¶ 50. However, "if the court determines that the commission of one offense will

*never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶ 51.

{¶26} In this case, Smith was convicted of two counts of Felonious Assault, one count of Aggravated Robbery, and two counts of Kidnapping. The Felonious Assault statute, R.C. 2903.11(A)(1), reads,

> **(A)  No person shall knowingly * * ***
>
> **(1)  Cause serious physical harm to another or to another's unborn;**

The Aggravated Robbery statute, R.C. 2911.01(A)(3), reads

> **(A)  No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:**
>
> ***  *  ***
>
> **(3)  Inflict, or attempt to inflict, serious physical harm on another.**

The Kidnapping statute, R.C. 2905.01(A)(3), reads

> **(A)  No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:**

\* \* \*

**(3) To terrorize, or to inflict serious physical harm on the victim or another;**

**{¶27}** In *State v. Logan*, 60 Ohio St.2d 126 (1979), the Ohio Supreme Court provided guidance on when Kidnapping merges with another offense.[4] In *Logan*, the Ohio Supreme Court held the following.

> **In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:**
>
> **(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;**
>
> **(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.**

*Logan* at syllabus, *Stall*, at ¶ 20.

**{¶28}** Thus our analysis of the merger issues in this case is guided by R.C. 2941.25, *Johnson*, *Logan*, and the corresponding criminal statutes referenced

---

[4] As both the State and Smith point out in their briefs to this court, in *State v. Stall*, 3d Dist. No. 3-10-12, 2011-Ohio-5733, we referenced the analysis in *Logan* as still being sound in determining whether Kidnapping merges with other offenses.

above. It should be noted that both at the time of sentencing, and on appeal, the State concedes that it is *possible* to commit the offenses in this case during the same course of conduct, which would satisfy the first prong of *Johnson*. However, the State adamantly disagrees with Smith's contention on appeal that in this instance the crimes *were* committed in the same course of conduct or with the same animus. Therefore, the State contends that the trial court's decision not to merge the offenses was correct.

{¶29} Smith argues on appeal that his convictions for Felonious Assault and Kidnapping against each victim should merge, and that his conviction for Aggravated Robbery should merge with his offenses against Miller. Smith contends that the offenses were committed in the same course of conduct. Smith made these same arguments at his sentencing hearing, and at that hearing, the trial court ultimately found "that none of the counts merge." (Feb. 14, 2013, Tr. at 31). In making this finding, the court reasoned,

> **While the Felonious Assaults and the Kidnappings could possibly occur at the same time, that's only part of the test. The other part is you have to view whether there was a separate animus for the offenses. When I review the discovery and the synopsis in the P.S.I. I would find that all of the offenses are separated sufficiently in terms of temporally and really geographically within the house. I would also point out that according to the information in the discovery and the P.S.I. the initial Felonious Assaults occurred and then, according to the information that the Court has, Miss Knoch was able to get out of the house and the defendant actually ran after her and left the house and spoke to a neighbor. So, the Felonious Assaults had**

> **occurred. Then they come back into the house and they resume. Additional Felonious Assaults and then the Kidnappings occur and the Robbery occurs separately from that.**
>
> **So, I would find that there are separate animuses for all of the offenses.**

(Feb. 14, 2013, Tr. at 31).

{¶30} Analyzing first the Felonious Assault, Kidnapping, and Aggravated Robbery of victim Miller, the facts of this case show that the Felonious Assault perpetrated by Smith against Miller occurred over a period of time and continued to escalate. Miller was initially beaten bloody by Smith's fists. That beating was stopped when Knoch attempted to leave the residence. After leaving Miller momentarily to bring Knoch back into the residence, Smith resumed beating Miller until Miller fell to the ground, at which time Smith kicked Miller repeatedly in the head and back. This was interrupted when Knoch tried to stop Smith. Subsequently, Miller was further beaten with a kitchen pan to the extent that the pan was heavily dented. As a result of these attacks, Miller was extremely bloody, barely conscious, and his blood had gotten all over the walls.

{¶31} Miller was restrained during these beatings, and in the interim. In addition, Miller was forced to wipe his blood off of the walls, and forced upstairs to take a shower to wash the blood off of him. While Miller was upstairs, the facts indicate that Smith came up and down the stairs and yelled that he was going to cut Miller and Knoch into pieces and bury them in the basement. This constitutes

an attempt to "terrorize" Miller, and had the police not shown up at the residence, Miller might have been subjected to further beatings or worse. Notably, when Miller was forced to wipe the walls down and forced upstairs, the Felonious Assault had already been completed, although there was threat of further Assault.

{¶32} Based on the facts of this case we find that the Felonious Assault and Kidnapping of Miller were separated by time and geography in the home, and that the Kidnapping created a substantial increase in risk of harm separate and distinct from the Felonious Assault, which would preclude merger under *Logan*. In addition, the record indicates a separate animus due to the later desire to terrorize Miller. Under these circumstances we cannot find that the Felonious Assault and the Kidnapping offenses perpetrated against Miller merge.

{¶33} Furthermore, we cannot find that the Felonious Assault against Miller merges with the Aggravated Robbery of Miller, as the Aggravated Robbery occurred after the Felonious Assault was complete. It is clear from the facts that the Felonious Assault of Miller was not done to further a Robbery, and it only occurred to Smith after he had already assaulted Miller to order Miller to strip and to take Miller's money. Thus there was a separate animus for each crime. This is consistent with our decision in *State v. Diggle*, 3d Dist. No. 2-11-19, 2012-Ohio-1583, wherein a victim was severely beaten and *then* robbed, and we determined

there was a separate animus for each offense. *Diggle* at ¶ 17. Therefore, the Aggravated Robbery and the Felonious Assault offenses do not merge.

{¶34} A separate animus also is discernible from the facts for the Kidnapping of Miller and the Aggravated Robbery of Miller as the detention far exceeded the length of time necessary for an Aggravated Robbery and created a substantial increase in risk of harm to Miller. Moreover, the prolonged detention was used to terrorize Miller with the threats of death and being chopped to pieces and buried in the basement. Furthermore, the detention occurred both before and after the Aggravated Robbery. Thus based on the facts of this case, we cannot find that any of the offenses against Miller merge.

{¶35} Turning next to the Felonious Assault and Kidnapping Smith perpetrated against Knoch, we similarly find that the offenses should not merge. Knoch attempted multiple times to get away from Smith and he restrained her liberty in each instance. After Knoch's early attempt to get away from Smith where she made it onto the front porch, Smith head-butted her, knocking her to the ground, causing what was described as a large hematoma to develop on Knoch's forehead. Knoch later tried for a second time to get away, but Smith blocked the door. Subsequently Knoch was ordered upstairs, and during that time, she was struck in the head by a bottle of wine that Smith had thrown, creating a deep, three-inch long gash that required 28 sutures.

{¶36} While Knoch was upstairs, Smith also made the comments about killing her and Miller and cutting them up into pieces. We find that based on these facts, the offenses would be considered separate under *Logan*, and a separate animus is discernible for the Kidnapping and the Felonious Assault of Knoch. Therefore, we find that the offenses against Knoch should not merge.

{¶37} Accordingly, we find that none of the offenses committed by Smith should have merged and that the trial court's conclusion on this matter at sentencing was correct. Smith's assignment of error is overruled.

{¶38} For the foregoing reasons Smith's assignment of error is overruled and the judgment of the Allen County Common Pleas Court is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and ROGERS, J., concur.**

**/jlr**