[Cite as *State v. Martin*, 2021-Ohio-1615.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                    Court of Appeals No. L-19-1133

      Appellee                                               Trial Court No. CR0201802792

v.

Kevin Martin                                               **DECISION AND JUDGMENT**

      Appellant                                              Decided:  May 7, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

John F. Potts, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} This matter is before the court on appeal of the judgment of the Lucas County Court of Common Pleas which, after a jury trial, sentenced appellant, Kevin Martin, to an aggregate term of imprisonment of seven years.  For the reasons that follow, we affirm.

{¶ 2} On August 22, 2018, after an argument over access to fuel pumps at the gas station at Cherry and East Bancroft Streets in Toledo, Ohio, appellant and his codefendants, Shawna Merriweather, Deangelo Gott, and Shantay Saxton participated in the assault and robbery of a man.  The gas station's surveillance video recorded the incident, occurring between 9:00 and 9:30 p.m.

{¶ 3} The video depicted the following sequence of events.

{¶ 4} Between 9:00 and 9:20 p.m., appellant and Merriweather parked their vehicles on either side of the gas pump, but neither appeared to pump gas.  Gott was a passenger in appellant's vehicle.  Saxton arrived shortly after, and began fueling her car at another pump, on the other side of appellant's car.  As her car was fueling, Saxton walked over to converse with Merriweather, seated in her vehicle.  The group was gathered around the gas pump at the center of the dispute when the victim, L.I., arrived to get gas.

{¶ 5} L.I. and his girlfriend arrived in their vehicle around 9:20 p.m., and stopped at the rear of Merriweather's car.  All other pumps were in use at the time, and Merriweather was just parked, not pumping gas.  L.I.'s girlfriend exited the vehicle and went into the store to prepay before pumping gas.  However, because Merriweather did not move, L.I. could not access the pump.

{¶ 6} After waiting a few minutes, L.I. walked up to the driver's side window, briefly spoke with Merriweather, and returned to his car.  L.I. left his car once more to access his trunk, but was back in his car when the group moved toward him.  At about

2.

9:26 p.m., L.I. and the group appeared to engage in an argument. L.I. attempted to inch his car closer to the pump and Merriweather's vehicle remained in place, blocking access.

{¶ 7} Around 9:28 p.m., L.I. exited his vehicle once more, gesturing, yelling, and appearing agitated. L.I. then walked toward the front door of the store, continuing to speak with the group following behind him. When L.I. turned toward appellant, Gott struck L.I. in the head, from behind, and L.I. dropped to the ground. Saxton and Merriweather then began kicking L.I. Appellant then grabbed L.I.'s pant legs or ankles and shook him upside down, with L.I.'s head toward the ground. Appellant, with Saxton's help, then dragged L.I. across the pavement and removed L.I.'s pants, leaving him naked from the waist down. Saxton took the pants and went through the pockets as Gott picked up loose items around L.I.'s motionless body. Appellant stood over L.I. and recorded him with his phone. Appellant then returned to his car, and Gott picked something up near L.I. and handed it to appellant. The group, each in their own vehicle, then drove away.

{¶ 8} Police received 911 calls from the scene, and when they arrived in response to the calls, they found L.I. unconscious and half-naked. By the time a medical crew arrived, L.I. had regained consciousness, and indicated he was unhurt. There was no further assessment at the scene, as L.I.'s family arrived, put L.I. in their car, and drove off. Sometime later, L.I.'s family took him to the hospital where he was admitted and treated for injuries including a brain bleed and potential seizures.

3.

{¶ 9} Appellant was indicted on three counts: Count 1, complicity to commit felonious assault in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree with an attached specification of participation in a criminal gang in violation of R.C. 2941.142; Count 2, complicity to commit aggravated robbery in violation of R.C. 2911.01(A)(3) and (C), a felony of the first degree, with an attached specification of participation in a criminal gang in violation of R.C. 2941.142; and Count 3, participation in a criminal gang in violation of R.C. 2923.42(A) and (B), a felony of the second degree.

{¶ 10} The matter proceeded to a jury trial on May 6 through 10, 2019. Prior to seating a jury, the trial court addressed motions in limine filed by appellant, seeking to preclude mention of gang activity that served as a basis for a prior conviction for gang activity, as well as social media materials. The trial court denied the motions in limine after the prosecution indicated it would only use gang activity after the date of the prior conviction[1], and indicated the use of social media materials would be limited to the Facebook account belonging to appellant and photographs posted of appellant and Gott and identified as such in testimony.

{¶ 11} At trial, the prosecution presented evidence including the surveillance video,[2] the 911 calls, L.I.'s medical records, and testimony of the first responders and a

---

[1] The state moved to amend the indictment to indicate conduct between December 29, 2013 and September 28, 2018, and the trial court granted the motion. The trial court also denied appellant's pro se motion to suppress, advising appellant that he had an attorney and hybrid representation was not permitted.

[2] The surveillance video was admitted by stipulation of the parties prior to trial.

4.

treating nurse at the hospital. Detective William Noon also testified as an expert in gang activity, and linked appellant to continuing membership in the Moody Manor Bloods, a Toledo gang, through evidence including appellant's prior, admitted association with a gang and his more current association and Facebook posts. Detective Noon also testified that gangs often used social media to post video of their crimes.

{¶ 12} Detective Richard Holland, the lead investigator, also testified. He indicated he interviewed the first responders and followed-up with L.I. and his girlfriend at the hospital, and learned that L.I.'s cell phone was missing after the assault, along with other property. L.I.'s girlfriend provided a description of the assailants to police, and after reviewing surveillance video, Detective Holland obtained photographs from the video of each of the individuals involved in the incident. Detective Holland identified appellant from his photograph, and as the jury viewed video of the incident, Holland pointed out each individual, including appellant, in the video. Based on the video and report of missing property, Detective Holland issued a robbery warrant for all four individuals involved in the attack on L.I.

{¶ 13} Appellant testified in his own defense. He acknowledged his past gang membership and his continued association with gang members, but denied he was still part of a gang, stating he left the gang. He also testified he grabbed L.I.'s pants because he was "checking the waistband," but denied assaulting or robbing him.[3] He also

---

[3] This testimony contradicted earlier representations in court, as appellant had previously represented to the court that he was "jumped out" of the gang and he removed L.I.'s pants

testified that he recorded the argument over the gas pump between Merriweather and L.I., and recorded L.I. laying half-naked and unconscious. Appellant admitted uploading the recordings to Snapchat.[4]

{¶ 14} The trial court instructed the jury regarding the charges, and included an instruction on complicity. After deliberating, the jury returned a verdict of guilty as to all counts and made the additional finding that appellant was participating in a criminal gang as to each specification.

{¶ 15} The trial court held a sentencing hearing on May 29, 2019, and ordered appellant to serve a prison term of two years as to Count 1, complicity to commit felonious assault, with an additional mandatory and consecutive two-year term imposed based on the jury's finding for the specification that appellant participated in a criminal gang. The trial court ordered appellant to serve a prison term of three years as to Count 2, complicity to commit aggravated robbery, with an additional mandatory and consecutive two-year term imposed based on the jury's finding for the specification that appellant participated in a criminal gang. The trial court ordered appellant to serve a

because he thought it would be funny. The prosecution noted this contradiction at appellant's sentencing hearing, questioning whether appellant lied under oath or lied to the trial court through his prior representations.

[4] These recordings were not admitted as exhibits and are not part of the record. Snapchat images are designed to disappear within a specified time period, and once that time period expires, the images are removed from the user's phone and the Snapchat server. *State v. Heard*, 7th Dist. Mahoning No. 17 MA 0064, 2019-Ohio-1227, ¶ 67, citing *Snap and Destroy: Preservation Issues for Ephemeral Communications*, 62 Bluff.L.Rev. 1239, 1248-1250 (2014).

prison term of two years for Count 3, participating in a criminal gang. The trial court ordered the sentences for Counts 1, 2, and 3 to be served concurrently, with the mandatory two-year terms for the criminal gang specifications attached to Counts 1 and 2 to be served consecutively, for an aggregate prison term of seven years.

{¶ 16} At sentencing, appellant's trial counsel did not request merger of the felonious assault count with the aggravated robbery count and there was no discussion of limiting the sentence to only one specification.

{¶ 17} Appellant filed a timely appeal from the judgment.

## II. Assignments of Error

{¶ 18} Appellant asserts the following issues as error on appeal:

I. IT CONSTITUTED ERROR NOT TO MERGE THE AGGRAVATED ROBBERY COUNT WITH THE FELONIOUS ASSAULT COUNT.

II. IT IS CONTRARY TO LAW TO SENTENCE DEFENDANT SEPARATELY FOR BOTH THE SPECIFICATION TO COUNT ONE AND THE SPECIFICATION TO COUNT TWO.

III. THE VERDICT ON COUNT TWO (AGGRAVATED ROBBERY) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

7.

## III. Analysis

{¶ 19} Appellant challenges the trial court's sentence, arguing the aggravated robbery and felonious assault convictions should have merged and the two specifications should not have resulted in two, separate sentences. He also challenges the weight of the evidence in support of his aggravated robbery conviction. We address his third assignment of error first.

## A. Manifest Weight

{¶ 20} In his third assignment of error, appellant argues his conviction for aggravated robbery was against the manifest weight of the evidence. Appellant was charged based on complicity in committing aggravated robbery in violation of R.C. 2911.01(A)(3) and (C), which provides:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> * * *
>
> (3) Inflict, or attempt to inflict, serious physical harm on another.
>
> (C) Whoever violates this section is guilty of aggravated robbery, a felony of the first degree.

{¶ 21} Appellant argued the evidence could not sustain a verdict because there was no evidence demonstrating he acted with a purpose to commit a theft offense. Specifically, appellant argues there was no distinction between the conduct required for

8.

complicity to commit a felonious assault and the conduct required for complicity to commit aggravated robbery, with an intent to commit theft.

{¶ 22} Applying the "manifest weight" standard, we sit as a "thirteenth juror," and may disagree with the jury's resolution of conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1977). We review the entire record, weigh the evidence and any reasonable inferences, consider the credibility of the witnesses, and determine whether the jury lost its way in resolving conflicts in the evidence, creating such a manifest miscarriage of justice that reversal and a new trial is necessary. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal based on the manifest weight of the evidence is reserved for only the exceptional case "in which the evidence weighs heavily against conviction." *Thompkins* at 387, quoting *Martin* at 175.

{¶ 23} Appellant was tried based on a complicity theory, and not as the principal actor. Ohio's complicity statute, R.C. 2923.03, provides in pertinent part, "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" To support a conviction based on complicity, there must be evidence showing appellant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that [appellant] shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. A jury may infer such intent "from the circumstances surrounding the crime." *Id.*

9.

{¶ 24} In this case, appellant argues he "never took anything from [L.I.]" and the assault was "a spontaneous occurrence," and not something that he planned with Saxton or Merriweather or Gott. He also argues that there was no evidence of separate conduct relative to the assault and the robbery. In support, appellant refers to his testimony that he barely knew Merriweather and Saxton. Appellant also argues that he, himself, did not take any of L.I.'s property with him when he drove away with Gott. However, appellant does not address other evidence or circumstances surrounding the crime.

{¶ 25} Regardless of any plan to assault and rob L.I., the video evidence demonstrated appellant's participation with the group before, during, and after the attack. Appellant was part of the group shown surrounding L.I. at his car and as he walked toward the store, and after Gott punched L.I. in the head and the women beat and kicked L.I. as he lay on the ground, appellant grabbed L.I. by the ankles or pant legs and held him upside down, jerking L.I.'s legs up and down as L.I.'s head hit the pavement. Appellant also participated in pulling L.I.'s pants off, and handed the pants to Saxton, who then went through the pockets and handed an object to appellant, which he put in his pocket. Furthermore, by his own admission, appellant filmed the argument before the attack and L.I.'s half-naked, unconscious body after the attack so that he could post the events to Snapchat. Appellant also drove off with Gott, leaving the scene of the attack as Saxton and Merriweather also drove away.

{¶ 26} Appellant's argument places him at the scene, but minimizes his role in the attack of L.I. and theft of his property. It is well-settled law that "mere presence" at the

scene is not evidence of aiding or abetting. *Johnson* at 244. However, evidence demonstrating "presence, companionship and conduct before and after the offense is committed" may provide support for the inference of criminal intent to assist in the crime. *Johnson* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971). Here, there was an abundance of evidence of companionship and cooperative conduct. Furthermore, the video of the incident contradicts appellant's argument that he played no part in taking L.I.'s property, as the video showed appellant stripping L.I.'s pants off and handing them to Saxton, who then took items from the pockets.

{¶ 27} Accordingly, based on the evidence presented to the jury, we find this is not one of those exceptional cases where the jury lost its way in finding appellant guilty of aggravated robbery. Appellant's third assignment of error, therefore, is not well-taken.

**B. Merger**

{¶ 28} Having found the aggravated robbery conviction was supported by the weight of the evidence, we next consider appellant's first assignment of error regarding merger of the felonious assault and aggravated robbery convictions. Appellant's argument as to merger relies on his assertion that the attack was spontaneous and his own conduct was limited to a single harm unrelated to any theft, similar to the position we rejected relative to his weight of the evidence challenge for his aggravated robbery conviction. Appellant contends that "it is identical conduct on the part of [appellant] that

simultaneously constitutes the factual basis [for appellant's] complicity in both [offenses]."

{¶ 29} Appellant did not seek merger in the trial court, and therefore, forfeited all but plain error review. *State v. Johnson*, 6th Dist. Lucas No. L-16-1282, 2018-Ohio-1657, ¶ 39, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Therefore, we will not reverse unless appellant demonstrates error, affecting his substantial rights and creating a manifest miscarriage of justice. *Rogers* at ¶ 3; *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), citing Crim.R. 52(B).

{¶ 30} The Double Jeopardy Clause of the United States Constitution protects against multiple punishments for the same offense. (Citations omitted.) *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. Ohio law codifies this constitutional protection under R.C. 2941.25, which provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

12.

{¶ 31} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Ruff* at ¶ 26. Thus, the same set of offenses might yield different results in different cases, "'given that the statute instructs courts to examine a defendant's conduct – an inherently subjective determination.'" *Id.* at ¶ 32, quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52 (plurality opinion).

{¶ 32} In applying the *Ruff* analysis, rather than focusing on the various elements of each offense, courts consider three, separate factors: "the conduct, the animus, and the import." *Ruff* at paragraph one of the syllabus. This consideration requires a court to ask three questions where a defendant's conduct supports multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions." *Ruff* at ¶ 31.

{¶ 33} Appellant was convicted of both aggravated robbery and felonious assault, based on complicity as to each offense. As previously noted, proof of aggravated robbery requires evidence that appellant committed or attempted to commit a theft offense and inflicted or attempted to inflict serious physical harm on another. R.C. 2911.01(A)(3). Proof of felonious assault required evidence that appellant knowingly caused serious physical harm to another. R.C. 2903.11(A)(1).

{¶ 34} Appellant raises no challenge to the serious physical harm element required for conviction on each offense, and he acknowledges the various, continuing attacks on

L.I., including the punch from Gott that sent L.I. to the ground, the beating inflicted by Merriweather and Saxton as L.I. lay on the ground, and appellant's own conduct in shaking L.I. upside down and striking L.I.'s head on the pavement. In arguing that merger was required, appellant argues that L.I. sustained a single harm resulting from a single, ongoing attack, and that there was no separate animus in the commission of each offense. Appellant also argues he, personally, caused no harm, "except to the extent [L.I.] may have been hurt when he fell or was dropped to the ground." Thus, while acknowledging he may have caused harm, appellant argues that the same conduct provided the basis for complicity as to both offenses, and therefore merger was required.

{¶ 35} Appellant's argument relies on his characterization of the facts, limiting his participation to dropping L.I. on his head and taking L.I.'s pants. Appellant also argues that he did not participate in any theft or any additional assault. However, as we previously noted in considering his manifest weight challenge, the evidence contradicts appellant's argument and instead supports a finding that he acted with complicity in the attacks and the theft of property.

{¶ 36} Multiple offenses against a single person "can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 26. Here, appellant participated with or was complicit in the attacks on L.I. that included Gott punching L.I. and knocking him to the ground, Merriweather and Saxton pummeling L.I. with kicks, and appellant—himself—lifting L.I. by his legs and dropping him on his

14.

head. Evidence of harm included testimony that L.I. required treatment for a brain bleed and potential seizures and testimony that L.I.'s phone was taken, coupled with the video of the group repeatedly beating L.I., taking L.I.'s pants, and removing contents from the pockets. Appellant argues each action was part of a continuum and should be treated as inflicting a single harm.

{¶ 37} Injury inflicted in quick succession with a single animus, such as repeated, rapid gunshots or stabbings, without any "break in a 'temporal continuum,'" is deemed as resulting in a single harm for purposes of merger. (Citations omitted.) *State v. Welninski*, 2018-Ohio-778, 108 N.E.3d 185, ¶ 92-94 (6th Dist.) (noting rapid gunshots or multiple stabbings, with a single animus, were subject to merger). In arguing a single harm, appellant focuses on the repeated physical attacks against L.I.'s person and ignores the separate and additional harm caused by the aggravated robbery, the harm to L.I.'s property. *See State v. Tellis*, 2020-Ohio-6982, 165 N.E.3d 825, ¶ 80 (6th Dist.) (harm to property is separate and identifiable from the physical harm caused by felonious assault).

{¶ 38} The evidence at trial also supported a finding that felonious assault and aggravated robbery were committed with separate animus. Where a victim is first severely beaten, and then robbed, courts have found the two crimes were committed with a separate animus. *See State v. Smith*, 3d Dist. Allen No. 1-13-09, 2013-Ohio-3789, ¶ 33, citing *State v. Diggle*, 3d Dist. Auglaize No. 2-11-19, 2012-Ohio-1583, ¶ 17. In this case, Gott punched L.I. in the head as L.I. walked toward the store, arguing with the group surrounding him, and there was no attempt to take L.I.'s property in conjunction with this

15.

assault. Merriweather and Saxton took over the beating, followed by appellant, dropping L.I. on his head as he stripped off the pants.

{¶ 39} Considering the evidence adduced at trial, we reject appellant's characterization of events as a single attack, producing a single harm, and carried out with a single animus. The evidence clearly supports finding an initial attack precipitated by the argument, followed by further attack motivated by a desire to deprive L.I. of his pants and property. Accordingly, we find no basis for merger of the felonious assault and aggravated robbery convictions. With no basis for merger, the trial court did not err, and appellant cannot demonstrate plain error affecting a substantial right and creating a manifest miscarriage of justice. Appellant's first assignment of error, accordingly, is not well-taken.

### C. Specifications

{¶ 40} In his second assignment of error, appellant contends the trial court erred in sentencing him on both specifications, arguing such sentence is contrary to law. In support, appellant raises separate arguments. First, appellant argues that, because the predicate sentences merge, the trial court could only impose a sentence for the specification attached to the offense elected by the prosecutor at the time of sentencing. As we determined merger did not apply, this argument is without merit.

{¶ 41} In the alternative, appellant argues that separate sentences for each specification would violate his Double Jeopardy protections under the Fifth Amendment to the United States Constitution, prohibiting multiple punishments for the same offense.

16.

The gang specifications, however, are sentence enhancements to the predicate offenses and not separate criminal offenses. *See State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, ¶ 16-17 (construing a firearm specification). Therefore, the double jeopardy protections and merger, codified at R.C. 2941.25, do not apply to specifications. *Ford* at ¶ 16.

{¶ 42} Finally, appellant argues that, based on the circumstances of his case, the trial court should have sentenced on only one specification. In support, he cites to authority applying the sentencing provisions under R.C. 2929.14(B), pertinent to firearm-related specifications. Pursuant to R.C. 2929.14(B), relative to specifications under R.C. 2941.141 (firearm possession essential to affect sentence), R.C. 2941.144 (possession of automatic firearm or firearm with suppressor), and R.C. 1941.145 (use of firearm to facilitate the offense), a court may not impose more than one prison term "for felonies committed as part of the same act." However, appellant's sentencing did not fall within any of these sections under R.C. 2929.14(B).

{¶ 43} Here, the trial court sentenced appellant for a gang specification, as provided by R.C. 2929.14(G), which contains no limiting provision based on the "same act." Pursuant to R.C. 2929.14(G):

> If an offender who is convicted of or pleads guilty to a felony that is an offense of violence also is convicted of or pleads guilty to a specification of the type described in section 2941.142 of the Revised Code that charges the offender with having committed the felony while participating in a

17.

criminal gang, the court shall impose upon the offender an additional prison term of one, two, or three years.

{¶ 44} Upon review of the sentencing provisions, we find no basis for a trial court to impose a single sentence for multiple gang specification findings, based on a single course of conduct as argued by appellant. Accordingly, we find appellant's second assignment of error not well-taken.

## IV. Conclusion

{¶ 45} For the forgoing reasons, we affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE


_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.