[Cite as *State v. Frierson*, 2024-Ohio-5521.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

        Appellee

v.

Brandon Charles Frierson

        Appellant

Court of Appeals No.   WD-23-065
                    WD-23-066

Trial Court No. 2023 CR 0039
                2023 CR 0041

**<u>DECISION AND JUDGMENT</u>**

Decided:  November 22, 2024

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

David Klucas, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** In this consolidated appeal, following a guilty plea, defendant-appellant, Brandon Frierson, appeals the November 22, 2023 judgments of the Wood County Court of Common Pleas convicting him of aggravated robbery and felonious assault, and sentencing him to an aggregate term of ten to 11.5 years in prison. For the following reasons, we affirm.

## I. Background

{¶ 2} On February 2, 2023, Frierson was indicted in two separate cases. In Wood County case No. 2023CR0039, Frierson was charged with two counts: count 1, receiving stolen property in violation of R.C. 2913.51(A) and (C), a fourth-degree felony; and count 2, failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a third-degree felony. In Wood County case No. 2023CR0041, Frierson was charged with four counts: count 1, aggravated robbery in violation of R.C. 2911.01(A)(3) and (C), a first-degree felony; count 2, felonious assault in violation of R.C. 2903.11(A)(1) and (D)(1)(a), a second-degree felony; count 3, breaking and entering in violation of R.C. 2911.13(A) and (C), a fifth-degree felony; and count 4, grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1) and (B)(5), a fourth-degree felony.

{¶ 3} Frierson was arraigned in both cases on March 21, 2023, and entered a plea of not guilty to all charges. On September 5, 2023, the trial court held a change-of-plea hearing. Pursuant to a plea agreement with the state, Frierson pleaded guilty to count 2 (failure to comply with an order or signal of a police officer) in case No. 2023CR0039, and to count 1 (aggravated robbery) and count 2 (felonious assault) in case No. 2023CR0041. The state agreed to dismiss all remaining counts at sentencing.

{¶ 4} After advising Frierson of his rights, the trial court asked the state to present the facts that underlie the charges associated with Frierson's guilty pleas. According to the state, two Bowling Green police officers, Kyle Wright and Amber Moomey, were on

2.

routine patrol just before midnight on January 18, 2023. Officer Wright's vehicle was equipped with an automatic plate reader, which scanned license plates and alerted the officer to any vehicles that had been reported stolen. The plate reader alerted Officer Wright that a 2014 Ford F-150, which he observed in a Wal-Mart parking lot, had been reported stolen. After verifying this information, Officer Wright got behind the vehicle and tried to make a traffic stop. The vehicle fled, first driving south to Route 6 and then heading west.

{¶ 5} Officer Wright activated his lights and sirens, but the vehicle did not pull over. As the vehicle traveled down Route 6, it reached a speed of approximately 90 m.p.h. This high rate of speed created a substantial risk of serious physical harm, especially given that the weather conditions at the time were "sleety, rainy [and] snowy," which made the roads "very treacherous." The police attempted to set up "stop strips" in front of the vehicle, but the driver pulled off the road in Weston, Wood County, Ohio. He exited the vehicle and fled on foot.

{¶ 6} The officers secured the abandoned vehicle, which was locked. They observed heavy jackets in the back of the car. They called the sheriff's department for assistance in searching for the missing driver. The sheriff's department spent the next three or four hours searching the area with drones, to no avail. They ceased their search around 4:00 a.m.

{¶ 7} When the officers were able to access the interior of the vehicle, they found medical records on the front seat for a person named Brandon Charles Frierson.

3.

According to the records, Frierson had visited the Blanchard Hospital emergency room in Findlay, Ohio, for an abscessed tooth "approximately four hours before the chase . . . ." They also recovered a heavy winter coat from the back seat.

{¶ 8} That night, the officers obtained video footage from Blanchard Hospital "from that period of time." The video shows the Ford F-150 pulling into the parking lot shortly after 8:00 p.m. A person gets out wearing a heavy coat and enters the emergency room. The interior cameras show that it was "clearly" Frierson who went to the hospital in the stolen truck. When Frierson takes off his heavy coat to have his blood pressure taken, he is seen wearing "a rather pinkish lightweight hoodie with a pretty unique design on it." He was also wearing a gray knit cap and white tennis shoes. Frierson walks out of the hospital two hours later and gets in "the same vehicle" and drives off. The heavy coat that police recovered from the vehicle was the same heavy coat that Frierson wore into the hospital earlier that evening.

{¶ 9} Just before 5:00 a.m., the victim in this case, S.F., arrived for work at Premier Industrial, formerly Fletcher Machinery, in his 2014 Silverado truck. Another employee, J.S., arrived at work around the same time. J.S. went into the kitchen to put his lunch in the refrigerator, and when he returned, he found S.F. "on the floor covered in blood, a lot of blood on the floor there, and his 2014 Silverado had been taken." There was a metal object that appeared to be the weapon that was used. S.F.'s keys were taken by the assailant. J.S. called 911 to report the assault and the theft of the vehicle. S.F. was

4.

life flighted to Toledo Hospital where he was treated for a head injury that required more than 20 sutures in his skull, two broken teeth, and a broken left clavicle.

{¶ 10} Shortly after the assault and vehicle theft were reported, the highway patrol post in Hancock County, near Findlay, saw the stolen Silverado. Troopers pursued the truck, which ended up driving through a chain link fence around a trailer park and parking in front of Frierson's ex-girlfriend's trailer. The troopers talked to the ex-girlfriend, but did not find Frierson at the trailer.

{¶ 11} Frierson went to Graham Packaging (which is within walking distance of the trailer) and attempted to enter the plant but was stopped by an employee. Frierson asked the employee if he could apply for a job, and the employee told him to come back during normal business hours. The employee, however, was "concerned about who he was" and called 911. Findlay police responded and arrested Frierson while he was sitting in a gazebo across the street from the plant.

{¶ 12} Findlay police took Frierson into custody and eventually transferred him to Wood County. They sent the clothing and shoes that he was wearing at the time of his arrest to Wood County with him. Frierson was wearing "the same gray cap, the same pinkish type of hoodie . . ." that he was wearing in the video from Blanchard Hospital. He was also wearing a jacket that had "Fletcher Machine Shop" on it. An employee who "works at that location . . . indicated it was his jacket and he had seen it hanging on the bathroom door the day before, and he didn't have permission to take that jacket." Premier Industrial, S.F.'s employer, was formerly known as Fletcher Machinery.

5.

Frierson's white shoes had red spots on them. The shoes were sent to BCI for testing; the red spots on the shoes were S.F.'s blood.

{¶ 13} After the state presented these facts, Frierson confirmed that "those [are] the facts" that he was "entering pleas of guilty to[.]" The trial court accepted his guilty pleas, ordered a presentence investigation report, and scheduled the matter for sentencing.

{¶ 14} Prior to sentencing, Frierson filed a sentencing memorandum arguing that the aggravated robbery and felonious assault convictions are allied offenses of similar import and should therefore merge at sentencing. On November 21, 2023, the trial court began the sentencing hearing by addressing the merger issue. After hearing arguments from both sides, the trial court concluded that the aggravated robbery and felonious assault convictions do not merge under the authority of *State v. Tellis*, 2020-Ohio-6982 (6th Dist.).

{¶ 15} Later in the sentencing hearing, relevant to the issues in this appeal, the state recited some of the facts underlying Frierson's guilty pleas. Regarding the "serious physical harm" element of the aggravated robbery and felonious assault charges, the state provided the following information:

> [In the presentence investigation report, Frierson] basically says he punched him, took his car keys, and left. But that's not what happened. The medical records support that. And the victim would talk about that he actually had some of his lower teeth knocked out from whatever he was hit with. He believes he was probably hit with some type of mental [sic] pipe.

He was then hit on the head which caused approximately twenty staples to be in his head. It was on the right side of his head, the back of his head. He was hit multiple times on his head with an item that caused him to have staples to do that. He also then had his left clavicle broken. Now, I don't think you can do that from a simple punch to the clavicle. So the amount of physical harm that he suffered, he suffered for a long period of time with pain caused by a very vicious attack that occurred that evening.

He then took the vehicle and fled. He left him there to die. He was bleeding on the floor. . . .

{¶ 16} Frierson did not object to the state's characterization of the facts.

{¶ 17} In two separate judgment entries dated November 22, 2023, the trial court sentenced Frierson to three to four and one-half years in prison for count 1, aggravated robbery, and five years for count 2, felonious assault, in case 0041, and to 24 months in prison for count 2, failure to comply with an order or signal of a police officer, in case 0039. The court ordered Frierson to serve the sentences in case 0041 consecutively to each other and ordered him to serve the sentence in case 0039 consecutively to the sentences in case 0041, for a total aggregate prison term of ten to 11.5 years in prison.[1]

---

[1] Although Frierson filed a notice of appeal in case 0039, he does not raise any issues related to that case in his brief, so our decision addresses only case 0041.

7.

{¶ 18} Frierson appealed.  He assigns the following error for our review:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY IMPOSING CONSECUTIVE SENTENCES[.]

## II. Law and Analysis

{¶ 19} In his sole assignment of error, Frierson argues that his convictions for aggravated robbery and felonious assault should have merged as allied offenses of similar import.

{¶ 20} The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, applicable to the state through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Double Jeopardy Clause protects against a number of abuses.  *State v. Ruff*, 2015-Ohio-995, ¶ 10.  Pertinent to this case is the protection against multiple punishments for the same offense.  *Id.*  To that end, the General Assembly enacted R.C. 2941.25, which directs when multiple punishments may be imposed.  *Id.* at ¶ 12.  The statute prohibits multiple convictions for allied offenses of similar import arising out of the same conduct:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses

8.

of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶ 21} In *Ruff*, the Ohio Supreme Court examined in detail the analysis a trial court must perform to determine whether offenses are allied offenses of similar import under R.C. 2941.25. It identified three questions that must be asked: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *Id.* at ¶ 31. If the answer to any of these questions is "yes," the defendant may be convicted and sentenced for multiple offenses. *Id.* at ¶ 25, 31. The court explained that offenses are of *dissimilar* import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. It emphasized that the analysis must focus on the defendant's conduct, rather than simply compare the elements of two offenses. *Id.* at ¶ 30.

{¶ 22} The defendant bears the burden of establishing that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 2013-Ohio-4982, ¶ 18, citing *State v. Mughni*, 33 Ohio St.3d 65, 67 (1987). An appellate court reviews de novo whether offenses should be merged as allied offenses. *State v. Bailey,* 2022-Ohio-4407, ¶ 6, citing *State v. Williams*, 2012-Ohio-5699, ¶ 1. "Although determining whether R.C. 2941.25

9.

has been properly applied is a legal question, it necessarily turns on an analysis of the facts . . . ." *Id.* at ¶ 11.

{¶ 23} Here, Frierson was convicted of aggravated robbery in violation of R.C. 2911.01(A)(3), which states that "[n]o person, in attempting or committing a theft offense . . . or fleeing immediately after the attempt or offense . . . shall . . . [i]nflict, or attempt to inflict, serious physical harm on another." Frierson was also convicted of felonious assault in violation of R.C. 2903.11(A)(1), which states that "[n]o person shall knowingly . . . [c]ause serious physical harm to another . . . ."

{¶ 24} In his initial brief, Frierson argues that "[t]he inclusive common element of serious physical harm makes consecutive sentences here contrary to law." He also argues that a factual analysis under *Ruff* does not support the trial court's decision because (1) there was a single victim, S.F.; (2) the offenses did not result in separate harms because "[h]ad Mr. Frierson only committed aggravated robbery, the harm suffered by S.F. would be the same[;]" (3) the offenses were not inflicted separately, rather, this was "a single assault followed by a bad fall to a hard floor[;]" and (4) it is "clear there is no separate animus" because the two offenses occurred "contemporaneously."

{¶ 25} The state argues in its brief that the convictions do not merge because there were separate harms, specifically "[t]he property that was taken in the aggravated robbery was S.F.'s truck, which could have been effectuated without the vicious beating meted out upon S.F. by Frierson." It also argues that there were three separate and identifiable "attacks" supporting separate harms—i.e., a supposed "frontal attack" that knocked out

10.

S.F.'s teeth, a "clubb[ing] from behind" that resulted in 20 staples in S.F.'s head, and then a final strike "from the front" that broke S.F.'s left collar bone. In sum, the state argued that "[b]ecause Frierson used more force than necessary to complete his aggravated robbery offense and the harm for a felonious assault is personal as opposed to the harm for an aggravated robbery, which is to property, it was proper for the trial court to not merge his aggravated robbery and felonious assault convictions."

{¶ 26} In reply, Frierson argues that contrary to the state's arguments, "[t]he facts in the record do not tell us how the assault happened, only the horrible injuries." He claims that "[t]here is nothing in the record to show that the injuries did not occur as a result of a single assault followed by a bad fall to a hard factory floor" and Frierson, as the defendant, "should get the benefit of the doubt rather than the punitive assumption that the worst thing happened." Frierson also argues that the state's argument relies on the "fictional proposition that the only harm suffered by an aggravated robbery victim is the loss of property. . . . Without the element of serious physical harm, there is no aggravated robbery. To say the harm is limited to loss of property is to define a different offense and disregard the reality of victims of aggravated robbery who suffer terrible injuries." Frierson urges us to reject what he describes as the "element erasing approach" that has led multiple courts to conclude that convictions for felonious assault and aggravated robbery do not merge.

{¶ 27} As an initial matter, we note that the Ohio Supreme Court has expressly rejected what we will describe as Frierson's "element-comparison approach"—i.e.,

Frierson's argument that aggravated robbery and felonious assault should merge due to the "inclusive common element of inflicting serious physical harm . . . ." It is true that, under *State v. Rance*, 85 Ohio St.3d 632, 636 (1999), Ohio courts were once instructed to "contrast the statutory elements [of multiple offenses] in the abstract" to determine whether those offenses should merge as allied offenses of similar import. But in 2010, the Supreme Court "overrule[d] *Rance* to the extent that it calls for a comparison of statutory elements solely in the abstract . . . ." *State v. Johnson*, 2010-Ohio-6314, ¶ 44. Then, in its 2015 decision in *Ruff*, the Supreme Court recognized that its analysis in *Johnson* was "incomplete" and clarified that "[r]ather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import." *Ruff*, 2015-Ohio-995, at ¶ 16, 30. Accordingly, contrary to Frierson's arguments, we must focus our attention on *the defendant's conduct* and not the statutory elements of the two crimes when conducting our merger analysis.

{¶ 28} To that extent, we reiterate that the governing *Ruff* test requires us to consider three questions when analyzing a defendant's conduct: (1) Did the offenses involve either separate victims *or* "separate and identifiable" harm? (2) Were the offenses committed separately? and (3) Were the offenses committed with separate animus? *Id.* at ¶ 23-25. An affirmative answer to *any* of these questions will permit separate convictions. *Id.* at ¶ 31.

12.

{¶ 29} Our analysis starts and stops with the first question because we find that the aggravated robbery resulted in harm that was "separate and identifiable" from the harm that was caused by the felonious assault. That is, the aggravated robbery caused two distinct types of harms—harm to S.F.'s property (the theft of his vehicle) and serious physical harm to S.F.'s person (a head injury requiring 20 staples, a broken clavicle, and two broken teeth). The felonious assault, however, caused only one type of harm— serious physical harm to S.F.'s person. Because the theft of S.F.'s vehicle is "separate and identifiable" harm that is unique to the aggravated robbery, the offenses do not merge.

{¶ 30} Several appellate courts—including this one—have reached similar conclusions when conducting a merger analysis in cases involving aggravated robbery and felonious assault. *See, e.g., State v. Donaldson*, 2023-Ohio-3538, ¶ 36 (6th Dist.) ("The felonious assault resulted in the harm of serious physical injuries to M.H., leading to his hospitalization, while the harm that resulted from the aggravated robbery was the taking of his property; his wallet and money."); *State v. Martin*, 2021-Ohio-1615, ¶ 37 (6th Dist.) ("In arguing a single harm [resulted from the aggravated robbery and felonious assault,] appellant focuses on the repeated physical attacks against L.I.'s person and ignores the separate and additional harm caused by the aggravated robbery, the harm to L.I.'s property."); *Tellis*, 2020-Ohio-6982, at ¶ 80 (6th Dist.) (finding that the harm caused by the felonious assault "was the physical injuries inflicted on L.H. when Tellis hit her with his pistol and caused her face to hit the concrete floor," while the harm

caused by the aggravated robbery was "the loss of approximately $1,200 and L.H.'s cellphone"); *see also State v. Guevara*, 2023-Ohio-1448, ¶ 25 (10th Dist.) (finding separate harms—i.e., physical injury and the "deprivation of . . . personal property"—where the defendant "beat[ the victim] severely until he fell to the ground . . . [then] got into [the victim's] vehicle and drove away"); *State v. Gambino*, 2022-Ohio-1554, ¶ 49 (11th Dist.) (finding separate harms where the felonious assault resulted in "the enduring trauma of [the victim's] grave injuries . . . [,]" and the aggravated robbery resulted in the loss of the victim's "wallet, car keys, and cell phone . . ."); *State v. Gillespie*, 2021-Ohio-3650, ¶ 47 (12th Dist.) ("The aggravated robbery resulted in the victim being deprived of approximately $18 cash, while the felonious assault resulted in the victim's severe injuries.").

{¶ 31} Given that we have answered the first question of the *Ruff* analysis in the affirmative and determined that Frierson's convictions are of dissimilar import due to "separate and identifiable" harm, we need not address the remaining two questions. *Tellis* at ¶ 81, citing *State v. Earley*, 2015-Ohio-4615, ¶ 12 (an affirmative answer "to *any* of the [required questions under *Ruff*] will permit separate convictions") (Emphasis added.) Frierson's sole assignment of error is not well-taken.

14.

### III. Conclusion

**{¶ 32}** Based on the foregoing, the November 22, 2023 judgments of the Wood County Court of Common Pleas are affirmed.  Frierson is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

_____

Myron C. Duhart, J.
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.