[Cite as *State v. Herrera*, 2022-Ohio-4769.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                      Court of Appeals No. WD-22-014

    Appellee                                  Trial Court No. 2021CR0060

v.

Alejandro Herrera                          **DECISION AND JUDGMENT**

    Appellant                                 Decided: December 29, 2022

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney,
David T. Harold, and James A. Hoppenjans, Assistant
Prosecuting Attorneys, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**OSOWIK, J.**

## A. Introduction

{¶ 1} Following a jury trial, the defendant-appellant, Alejandro Herrera, was

convicted by the Wood County Court of Common Pleas of committing felonious assault

against his girlfriend and then tampering with evidence of the assault. The trial court

sentenced him to serve between nine and twelve and one-half years in prison. On appeal,

appellant claims that the trial court erred in failing to declare a mistrial and that his conviction is not supported by legally sufficient evidence and is against the manifest weight of the evidence. As set forth below, we affirm the trial court's judgment.

## B. History

{¶ 2} On January 25, 2021, appellant stabbed the victim, S.S., multiple times in the leg with a knife and then stabbed himself in the abdomen. The state alleged that appellant then held the victim hostage by preventing her from leaving her apartment unless accompanied by him and withholding her car keys and cell phone. On the third day of the ordeal, appellant allowed the victim to go to work, where she reported her injuries and was convinced to go to the hospital. The police arrested appellant early the next morning.

{¶ 3} On February 18, 2021, appellant was indicted on charges of aggravated burglary, kidnapping, felonious assault and two counts of tampering with evidence. Appellant pled not guilty, and the case proceeded to a jury trial on December 8, 2021.

{¶ 4} At trial, the victim testified that the two had been dating a short time, since December 25, 2020, i.e. Christmas Day. One month later, on the day of the stabbing, the two argued about the victim's relationship with another man, "C.C." Appellant left the victim's Milbury, Ohio apartment, and when he returned, he "kicked the door in." At the time, the victim was sitting on her couch, talking on the phone to C.C., who was in jail. The phone call—recorded by the jail—was played for the jury.

2

{¶ 5} During the telephone conversation, a background noise can be heard, which the victim testified was the sound made from appellant busting down her door. After that, the victim can be heard saying, "[w]hat the fuck. You just kicked my fucking door. Fuck. I gotta go. I gotta call the cops." The victim testified that, after appellant barged into the apartment, he "ran [into the] kitchen and grabbed a knife and came out and basically started stabbing me. * * * I put my arms and legs up [motioning] to try to stop him." The victim identified "one [stab wound] of the side of [her] leg and one in the very back of [her] knee" but could not recall "which stab wound came first." During the attack, appellant "had a very * * * weird look in his eyes," and the victim yelled, "[y]ou're stabbing me. What are you doing?" and "stop." Appellant then turned the knife on himself, stabbing himself in the leg and the stomach. The moments that followed were "very hectic," and there was blood "everywhere." The victim was certain that she was "about [to] die" because she was "bleeding profusely."

{¶ 6} Within five to seven minutes of the stabbing, appellant forced the victim to leave the apartment because he was "worried" that another tenant would call the police. Appellant forced her to drive him, in her car, to the "High Level Bridge." Along the way, the victim was "yelling and screaming" in pain. Appellant told the victim that he intended to stab himself, again, at the bridge and that he wanted her to "push him in the river" and to "tell his family he was sorry and [that] they weren't there for him." When the victim refused, they left the bridge area and drove to two different gas stations, once for gas and another time for water. The victim was not allowed to go inside the gas

3

station and was forced to relieve herself outside, behind the gas station. The victim did not try to escape because appellant "still had weapons on him," and she was "afraid he was going to stab [her] again," including in public. She described her car as having "blood everywhere."

{¶ 7} Around midnight, the two returned to the victim's apartment, where the victim was forced to "shower right away and take [her] clothes off that [she] had on." Appellant took the victim's clothes and "put them in a bag," which he "threw * * * in the [Maumee] River" the next day. Appellant forced her to sleep that night on the couch, coiled "in between [his] legs" so that "he could see or hear or wake up if [the victim] got up." Appellant continued to maintain control of her car keys and phone.

{¶ 8} The victim described measures taken by appellant to remove the blood stains from the apartment, which included stopping at Meijer to purchase cleaning supplies, scrubbing the couch and wiping the floor. And, following a trip to Taco Bell—when the victim's blood spilled from her shoe onto the snow—appellant "got mad" and threw the Taco Bell "on the ground and smashed it all over the blood to try to cover the pool up on the ground."

{¶ 9} Two days after the stabbing, appellant and the victim drove to the Home Depot Distribution Center, where the victim works a second shift job. Appellant allowed the victim to report for duty, while he stayed in her car. During the victim's first break, appellant demanded that she drive him back to the apartment. When the victim returned to work, she reported her injuries to a co-worker and boss who instructed her to go to the

4

hospital.  Although the victim's knife wounds were treated, they could not be closed, because of the length of time that had elapsed since the stabbing, which had increased the risk of infection.  Ultimately, the victim's leg swelled up, and she was forced to miss two weeks of work.

{¶ 10} Lake Township Police Officer Kelly Clark took the victim's statement at the hospital.  The victim told the officer that appellant would likely be at her apartment, and she gave the officer her house key.  Around 7 a.m., now January 28, 2022, Officer Clark and Detective Matt Simon went to the apartment, while other officers provided backup along "the perimeter."  The apartment door was broken and appeared to be barricaded from inside, so the officers gained entry by kicking their way in and shoving the barricade aside.  The officers found appellant asleep in an upstairs bedroom.  When police pulled back the covers, they could see the appellant's bandaged leg and a puncture wound in his abdomen that was "not as deep as [the victim's puncture wound]."  Appellant was taken into custody.

{¶ 11} In the upstairs bathroom, police found an "8-inch blade knife" in a "basket with a towel draped over it," which the victim told police was the knife appellant "used" against her.   The knife appeared to have blood on it, consisting of "a red spot on the tip and a couple small spots throughout the knife." Back downstairs, the officers observed a bucket with a "bleach mixture" in it, near the couch where the stabbings occurred.  Police also observed "bloodstains" on the carpet and a bag "filled with clothes that [appellant] attempted to scrub the floor with."   In the washing machine was a quilt that, despite

5

having been washed, was also bloodstained. Outside the apartment, Officer Clark saw "blood droplets and puddles of blood in the parking lot * * * in front of where [the victim's] car was parked. They also saw Taco Bell remnants with blood on them. The officers observed a "significant" amount of blood in the victim's car.

{¶ 12} After the state presented its case-in-chief, defense counsel moved for an acquittal, which the trial court denied.

{¶ 13} Appellant testified in his own defense. According to him, the victim's testimony was riddled with "lie after lie." Appellant specifically denied that he busted into the victim's apartment that evening, that *he* stabbed *her,* or that he held her captive for three days. Appellant testified that he went to the victim's apartment that night merely to collect his coat and said that the victim was angry with him, not the other way around. He claimed that the victim first stabbed herself, in the abdomen, and then turned the knife on him. Appellant explained that "[s]he stabbed me because I was breaking up [with her]. She stabbed me because I found out everything about her. That she was a heroin user. That she was working [as a confidential informant for] the FBI." And, although appellant generally agreed on the events that occurred in the days that followed the stabbings—such as the stores they visited and the time they spent in the apartment— he disputed that he held the victim hostage or that he took control of her keys or phone. As to the concealing evidence offenses, appellant testified that it was the victim who "did most of the cleaning" in the apartment, and he specifically denied throwing her bloody clothes into the Maumee River.

6

{¶ 14} The jury found appellant not guilty of aggravated burglary, kidnapping, and one count of tampering (as to the disposal of clothing). But, it found him guilty of felonious assault, in violation of R.C. 2903.11(A)(2) and (D)(1)(a), a felony of the second degree (Count 3) and tampering with evidence, in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree (Count 5). By judgment entry dated February 15, 2022, and following a presentence investigation and hearing, the trial court sentenced appellant to serve a minimum, definite term of seven years and a maximum, indefinite term of ten and one half years in prison as to the felonious assault offense and a term of two years in prison as to the tampering offense. The trial court ordered that the terms be served consecutively to one another and consecutively to the sentences imposed in case Nos. 2021-CR-238 and 2021-CR-303. The total aggregate sentence imposed in this case was a minimum, definite term of nine years and a maximum, indefinite term of 12 and one-half years. The court also imposed a mandatory, minimum term of 18 months up to 36 months of post release control.

{¶ 15} Appellant appealed and raises three assignments of error for our review:

> I.    The trial court erred and abused its discretion by denying Appellant's motion for a mistrial.
>
> II.   The trial court erred in denying Appellant's Crim.R. 29 motion.
>
> III.  The jury's verdict was against the manifest weight of the evidence.

**C. The trial court did not err in denying appellant's request for a mistrial**

{¶ 16} In his first assignment of error, appellant argues that the trial court erred when it denied his request for a mistrial, following the victim's testimony that appellant had previously been "incarcerated."

{¶ 17} Crim.R. 33(A)(1) provides, in relevant part, that "a new trial may be granted on motion of the defendant for any of the following causes affecting materially the defendant's substantial rights:  [i]rregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial."  An error or irregularity in the proceedings requires a mistrial "only if it affects a defendant's substantial rights and prevents a fair trial."  *State v. Milligan,* 6th Dist. Sandusky No. S-20-004, 2021-Ohio-1071, ¶ 31, citing *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987); *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).  The grant or denial of a mistrial lies within the sound discretion of the trial court.  *State v. Trimble,* 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 173.

{¶ 18} "Courts do not declare a mistrial based on the mere mention of prison." *State v. Milligan,* 6th Dist. Sandusky No. S-20-004, 2021-Ohio-1071, ¶ 31, citing *Trimble.*  Absent evidence of "substantial prejudice," the error may be remedied with a curative instruction.  *Milligan* at ¶ 31 citing *Trimble* at ¶ 175.  "Whether the defendant's substantial rights were affected depends on whether the error was prejudicial, i.e.,

whether it affected the outcome of the trial." *State v. Jones*, 160 Ohio St. 3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 18.

{¶ 19} In this case, the reference to appellant's previous incarceration came during the victim's direct examination by the state, as set forth below:

THE STATE:  When was the first time you spoke to [appellant]?

WITNESS: *He was incarcerated* and we were talking through Facebook. That was the first time I ever spoke to him or messaged him or whatever.  And –

THE STATE: I'm going to have you hold on a second.  (Emphasis added.)

{¶ 20} During a sidebar conference away from the jury, the prosecutor explained that, despite "clear instructions * * * not [to] mention [defendant's previous incarceration], the victim had "slipped [up]."  Defense counsel moved for a mistrial, arguing that the damage could not be "undone."  The trial court denied the request but found that a curative instruction would be appropriate and indicated that it would give the instruction at a later time, to avoid drawing more attention to the issue.  During the jury instruction phase, and with the agreement of defense counsel, the trial court instructed the jury that, "[e]vidence was received about the commission of other acts than the offenses with which the defendant is charged in this trial.  That evidence was received only for a limited purpose.  It was not received, and you may not consider it to prove the character of the defendant in order to show that he acted in conformity or accordance with that character." *See, generally,* Evid.R. 404(B).

9

{¶ 21} On appeal, appellant argues that the "taint from [the victim's] testimony jeopardized his ability to get a fair trial * * * that could not be undone by the court's [curative] instruction." However, he points to no evidence that would suggest that the victim's comment affected the outcome of the trial, i.e. that but for that comment, he would have been found not-guilty as to the felonious assault or concealing evidence offenses. And, as argued by the state, appellant made *repeated* references at trial to his criminal history, including that he spent time in jail. Indeed, while testifying under direct examination, appellant insisted that the victim was a liar. To prove his point, he testified that she had lied about *when*—not if—he was in jail. He testified, "Christmas Day I was not in jail. * * * Christmas Day I was no longer not even at the halfway house. Christmas Day I was out in society. My parole officer can testify to that." On appeal, appellant claims that his comments were "logically impacted" by the trial court's refusal to grant a mistrial, which he fails to explain. In any event, the transcript clearly shows that appellant's comments were incidental to his effort to portray the victim as a person who told "lie after lie," to try "to get [him] in trouble."

{¶ 22} As in *Milligan* and *Trimble,* the victim's reference to appellant's incarceration in this case was "brief" and "isolated" and was later followed by a curative instruction, which appellant does not challenge on appeal. For these reasons, we find that the mere mention of appellant's incarceration, without more, did not unfairly prejudice appellant so as to require a mistrial. Moreover, there is no likelihood that appellant was prejudiced by the mention of his prior conviction, given his own testimony and due to

10

other, overwhelming evidence of his guilt in this case. *Accord Trimble* at ¶ 175*; see also State v. Bell*, 1st Dist. Hamilton No. C-140345, 2015-Ohio-1711, ¶ 43 (1st Dist.), *abrogated on other grounds, State v. Barker,* 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365 (no error where trial court gave limiting instruction to disregard testimony that defendant had been to prison); *State v. Slaughter,* 2d Dist. Montgomery No. 26135, 2015-Ohio-5303, ¶ 18 (passing reference to prison, without detail, properly addressed with curative instruction considering the weight of admissible evidence of guilt); *State v. Morgan*, 84 Ohio App.3d 229, 234, 616 N.E.2d 941 (5th Dist.1992) (mistrial not required where comment isolated and defense rejected a curative instruction); *State v. Ellison*, 8th Dist. Cuyahoga No. 16CA16, 2017-Ohio-284, ¶ 30-31 (8th Dist.) (statement isolated, not specifically elicited by the state, and evidence of guilt overwhelming); *State v. Pruiett*, 9th Dist. Summit No. 21796, 2003-Ohio-3256, ¶ 6 (despite three references to prior incarceration, evidence of guilt overwhelming and jury presumed to follow curative instruction

**{¶ 23}** Accordingly, we find no abuse of discretion by the trial court in denying appellant's motion for a mistrial, and his first assignment of error is without merit and found not well-taken.

**D. Appellant's convictions are supported by legally sufficient evidence.**

**{¶ 24}** In his second assignment of error, appellant alleges that the trial court erred in denying his motion for an acquittal as to the felonious assault and tampering offenses.

11

{¶ 25} Crim.R. 29(A) provides, in part, that, "[t]he court on motion of a defendant * * * after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 26} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). We examine the evidence in the light most favorable to the state and decide whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001); *Jenks* at 273. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386.

12

{¶ 27} We begin with appellant's felonious assault conviction. R.C. 2903.11 provides, in part, that

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another * * *;

(2) Cause or attempt to cause physical harm to another * * * by

means of a deadly weapon or dangerous ordnance.

{¶ 28} Appellant states, incorrectly, that he was convicted of committing a felonious assault under Section (A)(1) of the statute. In fact, appellant was indicted and convicted under Section (A)(2). Thus, the state did *not* have to show that appellant caused "serious physical harm," but rather "physical harm." Physical harm to a person is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). The state was also required to show that appellant caused such harm "by means of a deadly weapon or dangerous ordnance." A "deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried or used as a weapon." R.C. 2923.11. A knife is not presumed to be a deadly weapon. *Columbus v. Dawson*, 28 Ohio App.3d 45, 46, 501 N.E.2d 677 (10th Dist.1986). Rather, the prosecution must prove that the knife was designed or specially adapted for use as a weapon or, alternatively, that the defendant possessed, carried or used the knife as a weapon. *Id.*

13

{¶ 29} In challenging the sufficiency of the evidence, appellant fails to address the elements required to sustain a conviction under R.C. 2923.11.  Instead, he complains that the state's case "rested solely on the credibility of the alleged victim," and that his testimony was "at least as compelling" as the victim's such that it was "at best, a toss-up as to who was *telling the truth*."   (Emphasis added.)

{¶ 30} Setting aside appellant's near-admission that he may have perjured himself, his argument speaks to the weight, not the sufficiency, of the evidence.  In a sufficiency analysis, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks*, paragraph two of the syllabus; *Yarbrough* at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim).

{¶ 31} Upon review, the victim testified that, after appellant busted down her door, he "ran [into her] kitchen and grabbed a knife."  When appellant returned, he "started stabbing [the victim]," striking her on "the side of [the] leg and * * * the very back of [her] knee."  At trial, the victim identified an "8-inch blade knife" as "the knife he stabbed me with."   And, as a result of her wounds, the victim bled "profusely" and thought she was "about [to] die."  Three days later, she continued to "limp," and her wounds continued to seep blood through bandages, ultimately swelling so much that she missed two weeks of work.

{¶ 32} Contrary to appellant's claim, we find that the state produced evidence "to link" appellant to the knife and to the stabbing.  And, this evidence, if believed,

14

established that the state proved beyond a reasonable doubt that appellant caused physical harm to the victim, by means of a knife that he used as a weapon. Therefore, we find that the record contains sufficient evidence to support appellant's felonious assault conviction. *Accord State v. Rivers,* 8th Dist. Cuyahoga No. 81929, 2003-Ohio-3670, ¶ 32 (Sufficient evidence to support felonious assault conviction where victim testified that defendant wielded a five-to-six inch butcher knife that was "most assuredly capable of inflicting death.").

{¶ 33} Appellant also complains that the state did not present any "forensic evidence" that he "had the knife." The fact that the state did not present a particular type of evidence, including DNA evidence, does not negate the sufficiency of the evidence that the state did present. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1562, ¶ 165-167, quoting *Jenks* at paragraph two of the syllabus (Rejecting a sufficiency challenge where the defendant argued that the state presented no DNA evidence linking him to the murder). We find that the absence of DNA evidence fails to negate the sufficiency of the evidence presented in this case. *Accord State v. Turner*, 9th Dist. Summit No. 28775, 2018-Ohio-3898, ¶ 24.

{¶ 34} Appellant was also convicted of tampering with evidence by cleaning and sanitizing the area in and around the victim's apartment. R.C. 2921.12(A)(1) provides, in part, that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or

(availability as evidence) in such proceeding or investigation." There are three elements of the offense of tampering with evidence: "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley,* 139 Ohio St. 3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11. "[K]nowledge of a likely investigation may be inferred when the defendant commits a crime that is likely to be reported." (Emphasis omitted.) *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 118. Moreover, "the evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge." *Straley* at ¶ 16.

{¶ 35} In this case, appellant admits to "scrubbing the carpet and cushions," and, importantly, he also admits that the record contains evidence that "[he] tried to disguise or conceal [the victim's] blood outside in the snow on the ground." (Appellant's brief at 15). The record also contains evidence that appellant did "most[]" of the cleaning, and although the victim helped, it was at appellant's instruction. Also, when police arrested appellant in the victim's apartment, they observed a scrub brush with blood on it, a bucket filled with bleach and rags near the couch and surrounding carpet, both of which looked as though they had been cleaned, as well as a quilt and rug in the washing machine that "had bloodstains * * * even after attempting to wash [them]."

16

{¶ 36} We conclude that the evidence in this case supports the jury's finding, beyond a reasonable doubt, that appellant cleaned the bloodied areas of the apartment and near the victim's car, and that he did so for the purpose of altering, destroying, concealing or removing evidence of the assault, knowing that "an official * * * investigation [was] * * * about to be or likely to be instituted, R.C. 2921.12(A)." *Accord Martin* at ¶ 118 (Noting that the crime in that case, a homicide, is "likely to be discovered and investigated," which a "jury may reasonably believe that a murderer knows."); *see also State v. Ellis,* 10th Dist. Franklin No. 16AP-279, 2017-Ohio-1458, ¶ 27-29 (Sufficient evidence to support tampering conviction where defendant admitted that "she cleaned anything she touched in * * * the apartment to remove her fingerprints, cleaned off and disposed of the baseball bat and the knife used to kill [the victim], and cleaned off and dumped the victim's car."). Accordingly, we find that the state produced legally sufficient evidence to support the tampering offense set forth in Count 5. Therefore, appellant's second assignment of error lacks merit and is found not well-taken.

**E. The verdict was not against the manifest weight of the evidence.**

{¶ 37} While sufficiency of the evidence examines whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386, 678 N.E.2d 541. Under the manifest weight of the evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive—the state's or the

17

defendant's? *Id.* at ¶ 25. Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387.

{¶ 38} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony." *Wilson* at ¶ 25, quoting *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). A conviction should be reversed on manifest weight grounds only in the most "'exceptional case in which the evidence weighs heavily against conviction.'" *Thompkins* at 387 citing *Martin* at 175.

{¶ 39} Here, appellant asserts that this case "is all about witness credibility. Who is telling the truth?" Appellant complains that the victim's testimony was "rife with inconsistencies and untruths," and he specifically takes issue with evidence, or lack thereof, that the state relied upon to support the kidnapping and burglary counts. But, the jury found appellant *not guilty* of those offenses. Thus, the jury—like appellant—may

18

indeed have discredited the victim's testimony that she could not escape from appellant, despite many "public stops at various stores and locations" or that she could not have called her "long-term FBI contact" for help. The jury may have also questioned the absence of surveillance videos that could have supported the victim's testimony that she remained under appellant's control. Moreover, considering that appellant was also found not guilty of burglary, it is likely that the jury was unconvinced that the audio from the victim's phone call with C.C. showed that it was appellant "kick[ing] in" her door. In sum, as to the burglary and kidnapping offenses, the jury appears to have found the victim's testimony *less* credible than appellant's. Such was the province of the jury, which was "free to accept or reject evidence, to note ambiguities and inconsistencies in testimony—whether between several witnesses or in the conflicting statements of a single witness—and to resolve or discount them accordingly. Jurors may accept as true all, some or none of what a witness tells them." *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616. And, finally, we note that appellant does not specifically challenge the evidence relied upon by the state to support its felonious assault or tampering convictions, other than to characterize the victim as a "proven liar." "We are not persuaded that an errant verdict resulted merely because the jury believed the victim rather than [the appellant]." *Id.*

{¶ 40} A review of the record shows that there was credible evidence to support appellant's conviction for felonious assault and tampering with evidence, and we cannot find the evidence weighed heavily against the conviction, or that a manifest miscarriage

of justice occurred. Accordingly, we find appellant's third assignment of error not well-taken.

## F. Conclusion

{¶ 41} We conclude that appellant's conviction for felonious assault and tampering with evidence were not against the weight or sufficiency of the evidence. Similarly, we find that the trial court did not err in denying appellant's request for a mistrial. Accordingly, we find appellant's assignments of error not well-taken, and we affirm the February 15, 2022 judgment of the Wood County Court of Common Pleas. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                    _____
                                                        JUDGE
Thomas J. Osowik, J.

Gene A. Zmuda, J.                                       JUDGE
CONCUR.
                                            _____

                                            _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.