[Cite as *State v. Donaldson*, 2023-Ohio-3538.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                              Court of Appeals No.  L-22-1177

    Appellee                                          Trial Court No.  CR0202201854

v.

Kevin Donaldson                                      **DECISION AND JUDGMENT**

    Appellant                                         Decided:  September 29, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**DUHART, P.J.**

**{¶ 1}** Appellant, Kevin Donaldson, appeals the July 1, 2022 decision of the Lucas

County Common Pleas Court.  For the foregoing reasons, we affirm the lower court's

decision.

## STATEMENT OF FACTS

{¶ 2} On May 25, 2022, appellant was indicted on two counts; aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(3) and (C) (Count 1) and felonious assault, a felony in the second degree, in violation of R.C. 2903.11(A)(1) and (D) (Count 2). Both counts also included a repeat violent offender specification.

{¶ 3} A jury trial began June 6, 2022. The following facts are based on testimony obtained during trial.

{¶ 4} The victim in this case, M.H., testified that he lived at the Cherry Street Mission on March 8, 2022. On that day, he left the Cherry Street Mission and walked to the Lucky Dollar Store. On his way back, he was approached by a man who identified himself as "J.D. Brown." The man asked M.H. to light his cigarette, which he did. The two men then engaged in a conversation that concluded with the man asking M.H. for a couple dollars. M.H. gave the man a few dollars, tapped the man on the shoulder as "a kind gesture" and turned around to leave, but after taking two or three steps, M.H. was struck in the head, which caused him to fall. His assailant then "dropped their body weight" upon M.H., and repeatedly struck him in the head. Although M.H. did not see "J.D. Brown" hit him, M.H. believed his assailant was the man that had identified himself as "J.D. Brown." M.H. testified that he did not see anyone else in the vicinity at the time of his assault. During the assault, the assailant took M.H.'s money and wallet out of his pocket.

2.

{¶ 5} M.H. returned to the Cherry Street Mission, the police were called, and then M.H. was transported to St. Vincent's Hospital to receive treatment for his injuries. At the hospital, he was diagnosed with a right zygomaticomaxillary complex fracture, fractured nasal bones, right periorbital soft tissue swelling and a right frontal scalp hematoma. He also had lacerations to his nose and upper lip.

{¶ 6} Officer Mitchael Vanderhorst and Officer Spencer Hastedt from Toledo Police Department (TPD) were both dispatched to St. Vincent Hospital. M.H. provided the officers with a description of "J.D. Brown," describing him as a black male, bald, about six-two, 240 pounds, in his mid-fifties, with tattoos on his hands, wearing an all red Champion sweatsuit with black Nike tennis shoes.

{¶ 7} After receiving statements from M.H. at the hospital, Officers Vanderhorst and Hastedt conducted a search in the vicinity of the assault. While searching the area, the officers stopped appellant, who appeared to fit the description provided by M.H., with the exception of a black hoodie he was wearing over a red top. The officers also noticed dried blood on appellant's hands and fresh abrasions and swelling on his knuckles. Other than the dried blood on his hands, appellant looked clean.

{¶ 8} Appellant was first taken to the safety building and then transported to the jail. As appellant needed to be "medically cleared," he was taken to St. Vincent Hospital for treatment of the injuries to his hands. While there, appellant stated that "he wasn't sure how a fistfight could turn into a charge of robbery" and he indicated that the injuries to his hand had occurred that day.

3.

{¶ 9} On the date of the incident, M.H. was presented with a photo array that contained six photos so M.H. might identify the potential assailant, whom M.H. believed was "J.D. Brown." Each photo was numbered from one to six, with appellant's photo assigned number two. After viewing the photo array, M.H. circled number four. However, he told Sergeant Bortel, from TPD investigative services, that his brain was "scrambled" and that it could have been number two.

{¶ 10} After the state rested, appellant made a Crim.R. 29 motion for acquittal, on the basis that the state failed to produce sufficient evidence of his identity as the perpetrator. However, the Crim.R. 29 motion was denied. Appellant was ultimately found guilty of Counts 1 and 2.

{¶ 11} Prior to sentencing, the parties filed sentencing memoranda regarding whether the two convictions should merge for purposes of sentencing. At sentencing, the court concluded that the two offenses did not merge, as appellant had not satisfied his burden to prove that the offenses should merge.

{¶ 12} Appellant was then sentenced to serve a mandatory minimum term of 11 years and a maximum indefinite term of 16 and a half years for Count 1 (aggravated robbery). In regards to Count 2 (felonious assault), appellant was sentenced to a mandatory minimum term of 8 years and a maximum indefinite term of 12 years. The court ordered these sentences to be served concurrently. Appellant was also found to be a repeat violent offender. For the purposes of sentencing on the repeat violent offender

4.

specifications, Counts 1 and 2 were considered to be a single offense, and appellant was ordered to serve a five-year term, consecutively and prior to the sentences on the underlying felonies. Furthermore, as appellant was on post-release control for a previous felony at the time he committed the offenses at issue here, the trial court imposed an additional consecutive term of 966 days for the violation of post-release control. All costs were waived.

{¶ 13} This appeal followed the trial court's judgment.

## ASSIGNMENTS OF ERROR

{¶ 14} Appellant raises the following assignments of error:

1. The trial court erred to the prejudice of Appellant in finding that aggravated robbery and felonious assault were not allied offenses for purposes of sentencing

2. The trial court erred in denying Appellant's Crim.R. 29 motion.

3. The jury's verdict was against the manifest weight of the evidence presented at trial.

## LAW AND ANALYSIS

{¶ 15} For ease of analysis, we will address appellant's assignments of error out of order.

## Criminal Rule 29 Motion

{¶ 16} In his second assignment of error, appellant argues that the state failed to produce sufficient evidence to identify him as the assailant and therefore erred when it

denied his motion for acquittal. Appellant points to the fact that M.H. did not see who actually assaulted him and identified another person, not appellant, as "J.D. Brown" in the photo array. He also maintains that there was no video surveillance evidence and objects to the "minimal forensic evidence," arguing that officers did not test the blood found on M.H.'s wallet or clothing, or the dried blood under his fingernails.

*Standard of Review*

{¶ 17} "The standard of review for a denial of a Crim.R. 29 motion is the same as the standard of review for sufficiency of the evidence." *State v. Johnson*, 6th Dist. Wood Nos. WD-13-008, WD-13-009, 2014-Ohio-2435, ¶ 11, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995). When reviewing the sufficiency of the evidence, our function is to examine the trial evidence to determine "whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4.

*Appellant's Crim.R.29 motion was properly denied.*

{¶ 18} M.H. provided a detailed description of "J.D. Brown," who M.H. was speaking with immediately before he was hit from behind. Although M.H. did not

6.

actually see the person that hit him, he was hit right after turning away from "J.D. Brown" and he did not see anyone else in the vicinity. Additionally, within hours of the assault, officers went to the area where the incident occurred, where they observed appellant, matching the description given by M.H., with the exception of a black hoodie he was wearing. Furthermore, appellant had fresh abrasions on his hands, which he admitted he received from taking part in a fistfight that day.

{¶ 19} In regard to the photo array, although M.H. did not choose appellant, the photo he chose was of an individual similar in appearance to appellant, and M.H. also stated that his assailant could be number two, which was appellant's assigned number in the photo array.

{¶ 20} We find this evidence sufficient to convince a rational trier of fact of appellant's guilt beyond a reasonable doubt. Therefore, the motion for acquittal was properly denied.

{¶ 21} Consequently, appellant's second assignment of error is not well taken.

**Manifest Weight of Evidence**

{¶ 22} In the third assignment of error, appellant asserts that the jury's verdict was against the manifest weight of the evidence presented at trial, arguing that "the jury did not fully consider all the evidence in this matter, or lack thereof, prior to determining his guilt on the indicted charges of aggravated robbery and felonious assault." He contends the evidence was circumstantial, and, as with his claim of insufficient evidence, he points

7.

out that M.H. did not actually see who assaulted him or identify appellant in the photo array, and that there was no video evidence, nor any forensic investigation.

*Standard of Review*

{¶ 23} Although we have found that appellant's conviction is supported by sufficient evidence, we may nonetheless find that it is against the manifest weight of the evidence. *State v. Herrera*, 2022-Ohio-4769, 204 N.E.3d 1096, ¶ 37 (6th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Where the sufficiency of the evidence analysis "examines whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Id*., citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

{¶ 24} In determining whether appellant's conviction is against the manifest weight of the evidence, we must review the record, weigh the evidence and all reasonable inferences drawn from that evidence, consider the credibility of the witnesses and decide, in resolving any conflicts in the evidence, whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387. We do not view the evidence in a light most favorable to the state; rather, we "sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Lewis*, 6th Dist. Lucas No. L-21-1248, 2022-Ohio-4421, ¶ 22, quoting *State v. Robinson*, 6th Dist. Lucas No. L-10-

8.

1369, 2012-Ohio-6068, ¶ 15. Only in "the exceptional case in which the evidence weighs heavily against the conviction" is a conviction reversed on manifest weight grounds. *Id.*, quoting *Thompkins* at 387.

*The jury's verdict was fully supported by the manifest weight of the evidence.*

{¶ 25} As previously discussed, M.H. provided a detailed description of "J.D. Brown," who M.H. was speaking with immediately before he was hit from behind. Although M.H. did not actually see "J.D. Brown" hit him, M.H. was hit after turning away from "J.D. Brown" and taking only two or three steps and he did not see anyone else in the vicinity.

{¶ 26} Further, appellant was found near the location where the incident occurred, matching the description given by M.H. Appellant also had abrasions on his hand that he admitted to getting that day while in a fistfight. Although the victim did not choose appellant in a photo array, the photo that he did choose was very similar to appellant's photo, and he stated that it could be appellant. While appellant claims that the evidence is circumstantial evidence, the Ohio Supreme Court has held that "circumstantial evidence inherently possesses the same value as direct evidence." *State v. Davis,* 76 Ohio St.3d 107, 115, 666 N.E.2d 1099 (1996), citing *Jenks,* 61 Ohio St.3d at paragraph one of the syllabus, 574 N.E.2d 492.

{¶ 27} For these reasons, we find the jury's verdict was not against the manifest weight of the evidence. Therefore, appellant's third assignment of error is not well taken.

9.

**Allied Offenses**

{¶ 28} In his first assignment of error, appellant argues that the trial court erred in finding that aggravated robbery and felonious assault were not allied offenses for the purpose of sentencing. He contends that the offenses were perpetrated during a single course of action with a single animus, and therefore, they should have been merged.

*Standard of Review*

{¶ 29} We review de novo a trial court's ruling as to whether offenses should be merged as allied offenses of similar import under R.C. 2941.25. *State v. Smith*, 2023-Ohio-866, 210 N.E.3d 1177, ¶ 10 (6th Dist.), citing *State v. Bailey*, Slip Opinion No. 2022-Ohio-4407, ¶ 6.

*The trial court properly found aggravated robbery and felonious assault*
*to be non-allied offenses for the purposes of sentencing.*

{¶ 30} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which is applied to Ohio citizens through the Fourteenth Amendment, as well as Article I, Section 10 of the Ohio Constitution, protect against, inter alia, multiple punishments for the same offense. *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. R.C. 2941.25 codifies when multiple punishments can be imposed, and states that:

(A) Where the same conduct by defendant can be construed to constitute

two or more allied offenses of similar import, the indictment or information

10.

may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 31} Due to the fact that "the prosecution selects the charges that may be brought based upon the criminal conduct of an accused and that conduct may potentially support convictions of multiple offenses," it must be determined "whether the conduct of the accused can be construed to constitute a single or more than one offense." *Ruff* at ¶ 13. Because R.C. 2941.25 focuses on a defendant's conduct, it is dependent upon the facts of a particular case. *Id*. at ¶ 26.

{¶ 32} We ask three questions when determining whether appellant's conduct supports multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation." *Ruff* at ¶ 31. An affirmative answer to any of these questions will allow separate convictions. *Id.* The defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

11.

**{¶ 33}** Applying the *Ruff* analysis, we find that appellant's conduct supports multiple offenses. We find that the two offenses were committed with a separate animus.

**{¶ 34}** In *State v. Martin*, 6th Dist. Lucas No. L-19-1133, 2021-Ohio-1615, ¶ 38, this court concluded that aggravated robbery and felonious assault were committed with a separate animus "[w]here a victim was first severely beaten, and then robbed." Here, M.H. was first severely beaten upon the head, resulting in hospitalization, and then was robbed when appellant took the wallet and money out of the victim's pocket. The evidence supports a finding that an initial attack occurred when M.H. was struck, and once on the ground, another attack occurred when M.H.'s wallet and money were taken by appellant.

**{¶ 35}** Furthermore, in *State v. Johnson,* 6th Dist. Lucas No. L-16-1282, 2018-Ohio-1657, ¶ 45, we found that that "[w]here a defendant uses more force than necessary to complete aggravated robbery, he shows separate animus." Such is also the case here. M.H. is a disabled man, who fell to the ground after the first hit, and then continued to be hit, receiving several fractures to his nose and right orbital socket from the assault. Considering these facts, appellant used more force than necessary to complete the offense of aggravated robbery. Therefore, the evidence supports a finding that the offenses were committed with a separate animus.

**{¶ 36}** In addition, the evidence also supports a finding that dissimilar import existed, as the harm that resulted from each offense was separate and identifiable. Dissimilar import exists "when the defendant's conduct constitutes offenses involving

12.

separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 26. The felonious assault resulted in the harm of serious physical injuries to M.H., leading to his hospitalization, while the harm that resulted from the aggravated robbery was the taking of his property; his wallet and money. Therefore, the harm resulting from each offense was separate and identifiable.

**{¶ 37}** Consequently, the separate convictions are permitted and the offenses should not have merged.

**{¶ 38}** The first assignment of error is not well taken.

## CONCLUSION

The judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J. _____
                                                    JUDGE
Gene A. Zmuda, J.

Myron C. Duhart, P.J.                    _____
CONCUR.                                               JUDGE

                                                    _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

13.