[Cite as *State v. Harper*, 2024-Ohio-5847.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Maumee                     Court of Appeals No. L-24-1091

     Appellee                                        Trial Court No. 23 CRB 00680

v.

Jermain Michael Harper                          **DECISION AND JUDGMENT**

     Appellant                                       Decided:  December 13, 2024

* * * * *

Daniel C. Arnold, City of Maumee Prosecuting Attorney,
for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Jermain Michael Harper,

from the October 1, 2024 judgment of the Maumee Municipal Court.[1]  For the reasons that

follow, we affirm.

---

[1] Originally Harper appealed judgments journalized on March 21, 2024.  However, those judgments did not comply with Crim.R. 32(C), and thus, we remanded the case to the trial court to enter a single sentencing entry that complied with Crim.R. 32(C).  In response, the trial court issued its revised judgment entry on October 1, 2024.

## Assignments of Error

I. The trial court erred to the prejudice of [Harper] by denying the defense motion for acquittal pursuant to Crim. R. 29 as to all three charges.

II. [Harper's] convictions for resisting arrest and menacing were not supported by the manifest weight of the evidence.

## Background

{¶ 2} On September 2, 2023, Harper was arrested and charged with resisting arrest, in violation of R.C. 2921.33(A), a second-degree misdemeanor, and two counts of menacing, in violation of R.C. 2903.22(A), fourth-degree misdemeanors - one menacing count relating to victim A.D., and one menacing count relating to victim A.S. A bench trial was held on the matter on March 21, 2024, and A.D., Maumee Police patrolman Austin McDermott, and Harper testified. The following relevant testimony was presented.

{¶ 3} A.D. testified that, while working at Taco Bell on September 2, 2023, Harper, who was also a Taco Bell employee, "was walking around doing nothing, instead of doing his job," and A.S, who was the shift leader, told Harper "he needed to do his job or go home." When Harper "continued to keep walking around and talking to people pretending to work," A.S. clocked Harper out and told him to go home. Harper continued to walk around and talk to people. A.S. again told Harper to go home. At some point, Harper started to get very loud with A.S. A.D. testified that he got scared when he heard voices raised, although he couldn't hear what they were saying.

2.

**{¶ 4}** Eventually A.S. walked away to talk to another employee and Harper followed her into a small office where A.S. was with another employee. Initially, Harper would not let the other employee out of the office, but he eventually did. A.S. and Harper then started screaming again, and A.D. called 911 because "it started getting aggressive." Harper told A.S. that "he was going to hit her," and A.S. responded with "Go ahead and do it." A.S. continued to tell Harper he had to leave. Although at first Harper "was kind of being rebellious" and said "he didn't have to go," eventually Harper started making his way toward the front counter where A.D. was "just keeping calm and afraid." Until then, A.D. had not interacted with Harper. As Harper was walking around the counter into the area where A.D. was located, Harper said he was going to "bring his cop friend up here to beat all of our asses." A.D. then told Harper he needed to leave, and that the cops had been called, to which Harper retorted "Faggot, shut your bitch-ass up. I'll bring my cop friend up here to beat your ass." A.D. testified that he was scared at that point because he had "seen his violence," and that he absolutely believed Harper might carry out that threat, based on Harper's body language, his clenched fists, and the fact that he was being loud.

**{¶ 5}** Patrolman McDermott testified that he and his partner, Patrolman Henson, arrived at the Taco Bell and A.S. yelled that she wanted Harper charged. He noticed that Patrolman Henson asked Harper to put his phone on the table, and Harper was not complying, and was argumentative. Patrolman Henson then took the phone out of Harper's hand and both officers asked Harper to put his hands behind his back several

3.

times and he did not comply. The patrolmen then attempted to pull Harper's "arms behind his back, to which he tensed up his shoulder and locked his arms out and prevented [them] from doing so." When Harper continued to ignore verbal commands, Patrolman McDermott "had his right arm and … just dropped him to the ground." He was then secured in handcuffs "with no further incident."

{¶ 6} Patrolman McDermott's body camera video of the incident was also shown.

{¶ 7} On cross-examination, Patrolman McDermott admitted that he knew Harper from previous interactions, and then elaborated on the previous calls. He also stated that he put Harper under arrest for everyone's safety, due to factors such as Harper's size, the fact that he knew Harper to be noncompliant and argumentative, and the fact that the call came in as an assault.

{¶ 8} After the State concluded its presentation of witnesses, Harper's attorney made a Crim.R. 29 motion pertaining to the menacing charge against A.S, as she did not testify. The State did not oppose that motion and it was granted.

{¶ 9} Harper then testified. He explained that he was told to leave the building, which he was doing. He stated that A.S. was "mouthing off at" him and threatening him with her "gang friend" and to call the police on him, so he responded that he would call the police too, that his uncle is a police officer, which A.D. heard. As to his interactions with A.D., Harper stated that A.D. told him to leave the building and that he was on the phone with the cops at that moment to which Harper responded that he has them on speed dial, and that it was A.D. that called him a "fag" and was "mouthing off."

4.

{¶ 10} According to Harper, he clocked out, got his food, and met the officers at the door, with his keys in his hand and he was ready to go. He further testified as follows.

> I opened up the door - - pardon me, I met him at the door and I had my keys and I was ready to go. And the officer said, "Get on the ground." I'm thinking, "What's the problem?" You know, they talk like this on the line all of the time, they're arguing and cursing. So I said, "Well, why do you need me?" I mean, basically, I'm the older dog here and they are 25 year old and two 16 year olds. We're just closing the building. There's no robbery or anything." And he said, "Put your hands behind your back." I said, "For what?" You know, I had every right to ask for what. And then - - "I'm an employee. This is not a physical thing. I'm in a restaurant causing trouble." So I had my hat on and I put my Taco Bell hat on. He said, "Take your hat off." Well, that was an aggressive [sic] right there. He said "Take your hat off." So I didn't even want to make a move at that point. I just said, "Well, hold on. What's the situation.?" He said, "The other officer decided what was going on." I said, "The 25 year old was arguing and the 16 year old[]s were kind of watching what she was doing." So he just slammed me on the ground pretty much. You know what I am saying? He was cursing. So when he picked me up, I told the officer, "Sir, can we just talk about this in the car?"

{¶ 11} He was then asked what the officers did that was not right, and he said that the officer should have talked to him, and instead he "slammed [him] down immediately. Extremely aggressive. …cursing at me." He denied resisting arrest.

{¶ 12} At the close of the testimony, the judge found Harper guilty of both remaining counts. As to the resisting arrest charge, Harper was sentenced to 90 days at Lucas County Work Release with 80 days suspended on the conditions that he complete anger management counseling and have no contact with the victims. He was also ordered to pay a fine of $100 and court costs. Regarding the offense of menacing, he was sentenced to 30 days at Lucas County Work Release with 20 days suspended under the

5.

same conditions.  He was also ordered to pay a fine of $100 and court costs.  These sentences were to be served consecutive.

{¶ 13} Harper appealed.

## Law and Analysis

*Sufficiency of the Evidence*

{¶ 14} In his first assignment of error, Harper contends that the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29 as to the charge of menacing toward A.D., and the charge of resisting arrest.[2]  We first note that it does not appear that Harper made a Crim.R. 29 motion as to these two charges.  With respect to the Crim.R. 29 motion, Harper's attorney made the following statements.

> [HARPER'S ATTORNEY]….Your Honor, I would make a Rule 29 motion as it pertains to the menacing charge that pertains to [A.S.], that she is not …
> THE COURT: That's Part 3.
> [HARPER'S ATTORNEY]  Part 3.  She is not present today and I don't believe the state met their burden.[3]

{¶ 15} Despite the fact that no Crim.R. 29 motion was made, we will consider Harper's general argument that there was not sufficient evidence to support the charges of menacing against A.D. and resisting arrest.  With regard to the menacing argument,

---

[2]  Although Harper's assignment of error contends that the trial court erred by denying the motion "as to all three charges," the trial court granted the Crim.R. 29 motion pertaining to the menacing charge as to A.S.

[3]  We also note that the State did respond that it believes that it put forth sufficient evidence as to Parts 1 and 2, and the court did declare that "Parts 1 and 2 will proceed." However, these statements do not change the fact that Harper only raised the motion with respect to Part 3.

6.

Harper maintains that "two adult men calling each other names, without more, does not rise to the level of … menacing." He points out that there was no assault, that the testimony is disputed as to who is the aggressor. He contends that any statements A.D. made about believing he was in danger due to Harper's "violent arguing" with A.S. should be discounted, and "any evidence involving A.S. was improperly admitted" because A.S. did not appear at trial and the charge against her was dropped. He also asserts that, despite A.D.'s testimony that he threatened to call a family member to "beat A.D.'s ass," his threat was clearly an empty threat, and it was not reasonable for A.D. to be intimidated as Harper "was not in a position o[f] authority and he didn't have seniority over the other workers," he had only been at the job for a short time, his job was to do tasks such as washing dishes and mopping the floor, and there is no evidence anyone knew he had any connection with law enforcement. Furthermore, according to Harper, as there was no basis for the allegation of menacing, there was not a basis for arrest, and we therefore should find the resisting arrest charge moot.

{¶ 16} The State counters that sufficient evidence was presented based upon A.D.'s testimony that Harper "threatened him with physical violence to be inflicted by a police officer acquaintance" and as well as his testimony that Harper's body language was threatening, and he was yelling.

{¶ 17} The State argues that the resisting arrest charge should be looked at separately, that it is not tied to the underlying charge.

7.

{¶ 18} When reviewing the sufficiency of the evidence, our function is to examine the trial evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. A verdict should not be disturbed "unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *Jenks* at 273. The sufficiency of the evidence presents a question of law. *State v. Harvey*, 2022-Ohio-4650, ¶ 52 (6th Dist.), citing *State v. Thompkins*, 1997-Ohio-52.

{¶ 19} Here we find sufficient evidence to support Harper's conviction of menacing as to A.D. R.C. 2903.22(A) provides, inter alia, that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person…"

{¶ 20} To prove the fear-of-physical-harm element of menacing, the State must show that the victim had a subjective belief of fear of physical harm. *State v. McConnaughey*, 2021-Ohio-3320, ¶ 41 (1st Dist.). *See also State v. Cox*, 2016-Ohio-3250, ¶ 22 (5th Dist.); *State v. Buckner,* 2024-Ohio-2615, ¶ 21 (3rd Dist).

8.

**{¶ 21}** "Generally, under the menacing laws, the [S]tate does not need to prove the offender's ability to carry out the threat or any movement toward carrying it out." *State v. Collie,* 108 Ohio App. 3d 580, 583 (1st Dist. 1996), quoting *State v. Schwartz*, 77 Ohio App.3d 484, 486 (12th Dist. 1991), *State v. Roberts*, 1990 WL 410625 (1st Dist. Sept. 26, 1990) and Committee Comment to R.C. 2903.22(A).

**{¶ 22}** The measure of whether Harper caused A.D. to believe that he would inflict physical harm is his subjective belief of the same. "It is sufficient if the offender knowingly causes the victim to believe that the offender will carry his threat into execution. Hence, it is the victim's subjective belief which becomes the focal point for determining whether certain conduct violates the statute." *West v. West*, 1994 WL 680156, *3 (2d Dist. Dec. 7, 1994), quoting *City of Dayton v. Waugh*, Montgomery App. No. 6965 (Jan. 2, 1981).

**{¶ 23}** "Evidence of a person's belief that an offender will cause serious physical harm can be proven with circumstantial evidence." *State v. Landrum,* 2016-Ohio-5666, ¶ 9 (1st Dist), citing *State v. Crews*, 2001 WL 710143 (10th Dist. June 26, 2001).

**{¶ 24}** There is evidence in the record that Harper threatened A.D. with harm from a police officer acquaintance, that Harper's body language was threatening, and that A.D. testified that he was scared.

**{¶ 25}** Based on this evidence, we cannot find that reasonable minds could not reach the conclusion that Harper was guilty of menacing. Therefore, we find Harper's first assignment of error not well-taken with respect to his menacing conviction.

9.

**{¶ 26}** We further find his first assignment of error not well-taken with respect to his conviction for resisting arrest as his argument was based upon the dismissal of his menacing conviction.

*Harper's Convictions Were Supported by the Manifest Weight of the Evidence*

**{¶ 27}** Although we have found that Harper's convictions were supported by sufficient evidence, we may nonetheless find that the verdict was against the manifest weight of the evidence. *State v. Herrera*, 2022-Ohio-4769, ¶ 37 (6th Dist.), citing *Thompkins*, 1997-Ohio-52. Where the sufficiency of the evidence standard "examines whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Id*., citing *State v. Wilson*, 2007-Ohio-2202, ¶ 25.

**{¶ 28}** In determining whether Harper's convictions are against the manifest weight of the evidence, we must review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and decide whether in resolving any conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 2010-Ohio-6048, ¶ 48 (6th Dist.), citing *Thompkins*. We do not view the evidence in a light most favorable to the State; rather, we "sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Lewis*, 2022-Ohio-4421, ¶ 22 (6th Dist.), quoting *State v. Robinson*, 2012-Ohio-6068, ¶ 15 (6th Dist.). "Although we consider the credibility of witnesses under a manifest-weight

10.

standard, we must, nonetheless, extend special deference to the fact-finder's credibility determinations, given that it is the finder of fact that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor." *State v. Brooks*, 2023-Ohio-2978, ¶ 13 (6th Dist.), citing *State v. Fell*, 2012-Ohio-616, ¶ 14 (6th Dist.).

{¶ 29} With regards to the menacing conviction, Harper maintains that the underlying facts were "highly contentious and disputed by the people actually involved." He also asserts that any evidence relating to his altercation with A.S. is inadmissible as the charge relating to her was dismissed, and that despite this, the court did consider testimony about that altercation, as evidenced by the fact that, in its sentencing order, the court ordered Harper not to have any contact with more than one victim. Harper also again argues that, if there was no basis for the menacing charge, there was no basis for an arrest and the resisting arrest charge becomes moot.

{¶ 30} Upon our review of the record and the applicable law, weighing of all the evidence, and considering the credibility of the witnesses, and based on the reasons and the evidence described above, we find the trier of fact did not lose its way nor create a miscarriage of justice in finding Harper's menacing conviction was supported by the manifest weight of the evidence. As such, Harper's argument that his resisting arrest charge is moot also fails.

{¶ 31} Accordingly, we find Harper's second assignment of error not well-taken.

11.

## Conclusion

**{¶ 32}** The judgment of the Maumee Municipal Court is affirmed. Pursuant to

App.R. 24, Harper is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

_____
JUDGE

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.